T.C. Memo. 1995-470


UNITED STATES TAX COURT


HAROLD L. AND GLADYS M. HUMBERSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10066-93.                    Filed October 3, 1995.


Harold L. Humberson, pro se.

<u>Alan R. Peregoy</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


DAWSON, <u>Judge</u>:  This case was assigned to Special Trial

Judge Robert N. Armen, Jr., pursuant to the provisions of section

7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and

Rules 180, 181, and 183.[1]  The Court agrees with and adopts the

_____

    [1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the taxable year in
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

Opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

ARMEN, Special Trial Judge:  Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1990 in the amount of $33,676.17.  This amount includes the 10-percent additional tax imposed by section 72(t) on early distributions from qualified retirement plans.

The pivotal issue for decision is whether the Transfer Refund distribution received by petitioner Harold L. Humberson in 1990 from the Maryland State Teachers' Retirement System qualifies for forward averaging under section 402(e)(1).  The resolution of this issue turns on whether the Transfer Refund distribution constitutes a "lump sum distribution" within the meaning of section 402(e)(4)(A).

Also for decision are: (1) Whether petitioners are liable for the 10-percent additional tax imposed by section 72(t) on an early distribution from a qualified retirement plan; and, if petitioners are liable for any deficiency in tax, (2) whether they are liable for interest on such deficiency.

FINDINGS OF FACT

Some of the facts have been stipulated, and they are generally so found.[2]  Petitioners resided in Grantsville, Maryland, at the time their petition was filed with the Court.

---

[2] See infra notes 4 and 5.  See also infra note 17 regarding respondent's claim of an increased deficiency.

Petitioner Harold L. Humberson (petitioner) was a teacher with the Garrett County, Maryland, Public School System. During the course of his teaching career, petitioner taught a variety of subjects at various grade levels at different schools throughout the county.

Petitioner's Transfer Refund Distribution

During most of his teaching career, petitioner was a member of the Teachers' Retirement System of the State of Maryland (the Retirement System). However, on January 30, 1990, petitioner elected to transfer to the Teachers' Pension System of the State of Maryland (the Pension System).[3] Petitioner's election to transfer from the Retirement System to the Pension System was effective March 1, 1990.

The Retirement System is a qualified defined benefit plan under section 401(a) that requires mandatory nondeductible employee contributions. The Pension System is also a qualified defined benefit plan under section 401(a), but generally does not require mandatory nondeductible employee contributions. The State of Maryland contributes to both the Retirement System and the Pension System on behalf of the members of those systems. The trusts maintained as part of the Retirement System and the

_____

[3] For a discussion of the Retirement System and the Pension System, see generally Hylton v. Commissioner, T.C. Memo. 1995-27; Hoppe v. Commissioner, T.C. Memo. 1994-635; Hamilton v. Commissioner, T.C. Memo. 1994-633; Maryland State Teachers Association v. Hughes, 594 F. Supp. 1353, 1357-1358 (D. Md. 1984).

Pension System are both exempt from taxation under section 501(a).

As previously indicated, petitioner elected to transfer from the Retirement System to the Pension System on January 30, 1990. On the application to transfer, petitioner specifically opted to receive, in a lump sum, the distribution to which he was entitled upon transferring from the Retirement System to the Pension System.

As a result of the election to transfer, petitioner received a distribution (the Transfer Refund) from the Retirement System in the amount of $158,680.98.[4]  Of this amount, $158,446.20 was paid to petitioner by check dated March 31, 1990, from the Maryland State Retirement Systems and the balance, or $234.78, was paid by check dated May 31, 1990.

Petitioner's Transfer Refund of $158,680.98 includes $21,765.02 in previously taxed contributions and $136,681.18 of earnings.[5]  The earnings represent interest and constitute the taxable portion of that part of the Transfer Refund that was paid

---

[4] The parties stipulated that the Transfer Refund amounted to $158,680.96.  The documentary record clearly reveals, however, that the correct amount is $158,680.98.

[5] So stipulated.  The sum of these two amounts equals $158,446.20, which is the amount of the check dated March 31, 1990, from the Maryland State Retirement Systems.  Although the record is not completely clear regarding the status of the balance of the Transfer Refund, i.e., the $234.78 amount that was paid to petitioner by check dated May 31, 1990, it would appear that this amount represents taxable employer "pickup" contributions.  See sec. 414(h).

to petitioner in March 1990.

Petitioner did not ultimately roll over the Transfer Refund into either an individual retirement account or an individual retirement annuity.[6]

At the time that petitioner transferred from the Retirement System to the Pension System, he had attained the age of 57. If petitioner had not transferred to the Pension System but had remained a member of the Retirement System, he would have been entitled to retire and receive a normal service retirement benefit, including a regular monthly annuity, under the Retirement System. He would not have been entitled to receive a Transfer Refund, however, because a Transfer Refund is payable only as a consequence of transferring from the Retirement System to the Pension System.

Also as a consequence of transferring from the Retirement System to the Pension System, petitioner became a member of the Pension System. As a member of the Pension System, petitioner became entitled to receive a retirement benefit based upon his salary and his creditable years of service, specifically including those years of creditable service recognized under the

----

[6] Petitioner initially rolled over the Transfer Refund into an individual retirement account. Thereafter, in July 1990, the Internal Revenue Service ruled that a transfer refund distribution did not qualify for rollover treatment. Upon learning of the ruling, petitioner withdrew the Transfer Refund from his IRA and invested it elsewhere. As discussed infra, petitioner reported the Transfer Refund as ordinary income on his 1990 Federal income tax return.

Retirement System.[7]  However, because petitioner received the Transfer Refund on account of transferring from the Retirement System to the Pension System, the monthly annuity that petitioner would receive upon retiring from the Pension System was less than the monthly annuity that he would have received if he had not transferred to the Pension System but had retired under the Retirement System.

Petitioner's Retirement

On February 28, 1990, after he had elected to transfer from the Retirement System to the Pension System, petitioner executed a Letter of Intent in which he advised the Garrett County Board of Education of his intent to retire by July 1, 1990. Subsequently, on May 7, 1990, petitioner applied to the Maryland State Retirement Systems for a normal service retirement from the Pension System effective July 1, 1990.  Two days later, on May 9, 1990, petitioner tendered his resignation to the Garrett County Board of Education effective July 1, 1990.

Petitioner retired effective July 1, 1990, after nearly 30 years of service working as a teacher.  At that time petitioner was 58 years old.

As a result of his retirement, petitioner is receiving a normal service retirement benefit from the Pension System based

---

[7] Petitioner became a member of the Retirement System upon his employment by the Garrett County Board of Education.  He remained a member of the Retirement System for all but the last few months of his teaching career.

upon his salary and his creditable years of service, specifically including those years of creditable service recognized under the Retirement System.  However, as previously indicated, because petitioner received the Transfer Refund on account of transferring from the Retirement System to the Pension System, petitioner's monthly annuity is less than the monthly annuity that he would have received if he had not transferred to the Pension System but had retired under the Retirement System.

Petitioner's 1990 income tax return

Petitioner received a corrected Form 1099-R (Total Distributions From Profit-Sharing, Retirement Plans, Individual Retirement Arrangements, Insurance Contracts, Etc.) from the Maryland State Retirement Agency for 1990.  The Form 1099-R reported the payment of the Transfer Refund in the amount of $158,680.98.  The form also reported that the taxable portion of the Transfer Refund was $138,228.88 and that petitioner's previously taxed contributions amounted to $20,452.10.[8]

On their income tax return for 1990, petitioners reported as ordinary income the taxable portion of the Transfer Refund, as

---

[8] The discrepancy between the taxable portion of the Transfer Refund as reported on the Form 1099-R, i.e., $138,228.88, and the taxable portion as stipulated by the parties of that part of the Transfer Refund that was paid to petitioner in March 1990, i.e., $136,681.18, is unexplained in the record. Similarly, the discrepancy between the amount of petitioner's previously taxed contributions as reported on the Form 1099-R, i.e., $20,452.10, and petitioner's previously taxed contributions as stipulated by the parties, i.e., $21,765.02, is also unexplained in the record.  In both instances, we accept the parties' stipulation.

set forth on the Form 1099-R, and elected 10-year forward averaging under section 402(e)(1). In this regard, petitioners attached Form 4972 (Tax on Lump-Sum Distributions) to their income tax return and reported on said form ordinary income in the amount of $138,229, i.e., the taxable portion of the Transfer Refund as set forth on the Form 1099-R. Petitioners then computed the tax on said amount and included such tax as part of their total income tax liability on page 2 of their Form 1040.

Respondent's Notice of Deficiency

In the notice of deficiency, respondent determined that petitioners do not qualify for 10-year forward averaging. Accordingly, respondent treated the taxable portion of the Transfer Refund, which she determined to be $136,094.23, as subject to the regular income tax.[9] Respondent also determined that petitioners are liable for the 10-percent additional tax imposed by section 72(t) based on the distribution in the foregoing amount.

OPINION

Respondent contends that the Transfer Refund does not qualify for forward averaging because it does not constitute a "lump sum distribution" within the meaning of section

---

[9] The discrepancy between the taxable portion of the Transfer Refund as determined in the notice of deficiency, i.e., $136,094.23, and the taxable portion as stipulated by the parties of that part of the Transfer Refund that was paid to petitioner in March 1990, i.e., $136,681.18, is unexplained in the record. We accept the parties' stipulation.

402(e)(4)(A).  Respondent also contends that petitioners are liable for the 10-percent additional tax imposed by section 72(t) because the Transfer Refund constitutes an early distribution from a qualified retirement plan.  Petitioners disagree.

Lump Sum Distribution Issue

As a general rule, a distribution from a qualified plan, such as the Retirement System, is taxed to the recipient in the year distributed under the rules relating to annuities.  Sec. 402(a)(1); see sec. 72.  However, section 402(e)(1) provides a preferential forward averaging method of computing the tax on certain such distributions.  The parties agree that petitioners are entitled to this preferential method of computing the tax on the Transfer Refund if the Transfer Refund constitutes a "lump sum distribution" within the meaning of section 402(e)(1)(A).[10]

A lump sum distribution, for purposes of section 402, is defined in section 402(e)(4)(A) as follows:

> (A) Lump sum distribution.--For purposes of this section * * * , the term "lump sum distribution" means the distribution or payment within one taxable year of

---

[10] The Tax Reform Act of 1986 replaced the 10-year forward averaging method with a 5-year forward averaging method for lump sum amounts distributed after Dec. 31, 1986, in taxable years ending after such date.  Tax Reform Act of 1986, Pub. L. 99-514, sec. 1122(a)(2), (h)(1), 100 Stat. 2085, 2466, 2470.  However, Tax Reform Act of 1986, secs. 1122(h)(5) and 1124 provide transitional rules under which lump sum distributions made after Dec. 31, 1986, will nevertheless continue to qualify, under certain limited circumstances, for the more generous 10-year forward averaging method; 100 Stat. 2085, 2471, 2475.  Because of his age, petitioner falls within the scope of the transitional rules, provided, of course, that the Transfer Refund qualifies as a lump sum distribution.

the recipient of the <u>balance to the credit</u> of an
employee which becomes payable to the recipient--
    (i) on account of the employee's death,
    (ii) after the employee attains age $59^1/_2$,
    (iii) on account of the employee's separation from the
       service, or
    (iv) after the employee has become disabled * * *
from a trust which forms a part of a plan described in
section 401(a) and which is exempt from tax under
section 501 * * * .  For purposes of this subsection,
the balance to the credit of the employee does not
include the accumulated deductible employee
contributions under the plan (within the meaning of
section 72(o)(5)).  [Emphasis added.]

There is no dispute that the Retirement System is a plan
described in section 401(a) and that the trust forming a part
thereof is exempt from tax under section 501.  Moreover, there is
no dispute that the Transfer Refund distribution was made within
a single taxable year.  Therefore, we must decide (1) whether
petitioner received the "balance to the credit" when he received
the Transfer Refund and (2) whether the Transfer Refund became
payable to petitioner "on account of the employee's separation
from the service".

In support of her determination that petitioner did not
receive the "balance to the credit" when he transferred from the
Retirement System to the Pension System, respondent relies on the
fact that petitioner's years of creditable service under the
Retirement System carried over to the Pension System, see Md.
Ann. Code, art. 73B, sec. 144(4) (1988), and on the related fact
that those years of service increased the monthly annuity benefit
to which petitioner is entitled.

By contrast, petitioners contend that petitioner received the entire account balance from the Retirement System when he received the Transfer Refund.[11]  Therefore, petitioners conclude that the "balance to the credit" requirement of section 402(e)(4)(A) is satisfied.

We begin our analysis with section 402(e)(4)(C).  That section provides, in relevant part, as follows:

> (C) Aggregation of certain trusts and plans.--For purposes of determining the balance to the credit of an employee under subparagraph (A)--

> (i) all trusts which are part of a plan shall be treated as a single trust, <u>all pension plans maintained by the employer shall be treated as a single plan</u> * * * .  [Emphasis added.]

During the years in issue, the State of Maryland maintained both the Retirement System, in which petitioner participated until March 1, 1990, and the Pension System, to which petitioner transferred effective as of that date.  Accordingly, in order to decide whether petitioner received the "balance to the credit", we must treat the Retirement System and the Pension System as a single pension plan.  Sec. 402(e)(4)(C).

Under Maryland law, petitioner's annuity under the Pension

---

[11] Respondent appears to concede implicitly that the Transfer Refund included all of petitioner's contributions and the earnings thereon.  Cf. <u>Wheeler v. Commissioner</u>, T.C. Memo. 1993-561 (a member of the Retirement System did not receive the "balance to the credit" upon receiving a Transfer Refund; a portion of the member's contributions was transferred from the Retirement System to the Pension System).

System is calculated by taking into account petitioner's "average final compensation" and petitioner's years of "creditable service". Md. Ann. Code, art. 73B, sec. 145(2) (1988). Because section 402(e)(4)(C) requires that we treat the Retirement System and the Pension System as a single pension plan, we conclude that, by transferring from the Retirement System to the Pension System, petitioner did not forfeit his right to a future monthly annuity, but simply elected to receive an initial single payment to be followed by a reduced monthly annuity. Effectively, petitioner's transfer allowed him to receive the "balance to the credit" in two parts, an initial single payment to be followed by a reduced monthly annuity, based on all of his years of creditable service, and on his salary during those years. See Green v. Commissioner, T.C. Memo. 1994-340.

The testimony of petitioner at trial reflects the foregoing. Thus:

Q: * * * And you transferred to that Pension System from the Retirement System in 1990; is that correct?

A: Yes, sir.

Q: Okay. Do you know how your pension annuity is currently calculated?

A: It's calculated on your number of years in service and what your salary was.

Q: Okay. And do you know that your annuity was calculated based on all of the years of service that you had, the entire time you've been employed with the State of Maryland?

A:  Yes, sir.

Q:  So that those years would include the years of which you are a member of the Retirement System; is that correct?

A:  Yes.

Q:  Thank you.  And do you also know that the benefit in particular that you are now receiving under the Pension System is calculated based on all of those years?  It's stipulated in paragraph 18, that the benefit you're receiving in the Pension System is calculated by including the years of creditable service recognized under the Retirement System.  That's your understanding of what you're receiving now, correct?

A:  Yes, sir.

In an effort to counter the foregoing, petitioners contend that IRS Publication 575 (Pension and Annuity Income) and IRS Publication 590 (Individual Retirement Arrangements), as well as explications of those publications by the Maryland State Retirement and Pension Systems, support petitioners' position that the Transfer Refund constitutes a "lump sum distribution". This contention, however, is contrary to the well-established principle that the authoritative sources of Federal tax law are the statutes, regulations, and judicial decisions, and not informal publications authored by the Internal Revenue Service or others.  Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979); Green v. Commissioner, 59 T.C. 456, 458 (1972).  A fortiori, explications of such publications by a Maryland State agency are

similarly not authoritative.[12]

Petitioners also contend that the alleged failure by the administrator of the Retirement Plan to provide the written explanation required by section 402(f) is somehow attributable to respondent and requires respondent to assume the burden of proof. The short answer to this contention is that we have decided the issue in dispute without regard to the burden of proof. In any event, section 402(f) imposes a duty on plan administrators and not on the Commissioner.[13]

Petitioners complain that neither the taxable amount of the Transfer Refund nor the amount of petitioner's previously taxed contributions has ever been precisely determined. Here we can

---

[12] We observe that the IRS publications and the explications thereof by the State agency are consistent with our analysis as set forth above. For example, the agency describes a lump sum distribution as "the distribution or payment within one tax year of an employee's <u>entire balance</u> * * * from <u>all</u> of the employer's qualified pension plans * * *." (Emphasis added.) IRS Publication 590 describes a lump sum distribution similarly: "Generally, a lump-sum distribution must include your <u>complete share</u> * * * in <u>all</u> of your employer's pension plans." (Emphasis added.)

We also observe that the Transfer Refund is <u>not</u> a lump sum distribution for internal revenue purposes merely because it may have been considered to be a "lump sum distribution" for purposes of the Maryland State Teachers' Retirement System. For internal revenue purposes, the term "lump sum distribution" is a term of art and is expressly defined by section 402(e)(4)(A). For internal revenue purposes, any other definition of the term is simply irrelevant.

[13] Moreover, it does not appear that the Transfer Refund was even eligible for rollover treatment. See <u>Dorsey v. Commissioner</u>, T.C. Memo. 1995-97; <u>Brown v. Commissioner</u>, T.C. Memo. 1995-93.

appreciate petitioners' frustration because, although these amounts have not differed dramatically, they have not remained constant throughout the administrative and pretrial stages of this case.  Nevertheless, petitioners ultimately stipulated to the relevant amounts, and our findings are based on the parties' stipulation.[14]

In view of the foregoing, we hold that the Transfer Refund did not constitute a lump-sum distribution within the meaning of section 402(e)(4)(A) because petitioner did not receive the "balance to the credit" when he transferred from the Retirement

---

[14] See *supra* note 5 and the associated text.  We observe that the Court offered to reopen the record after trial in order to accommodate a revised stipulation.  However, nothing was ever forthcoming from the parties.

Of perhaps even greater significance is the fact that the decision to be entered herein will reflect the deficiency as determined by respondent and not an increased deficiency.  See *infra* note 17.  In this regard we observe that the deficiency as determined by respondent effectively credits petitioner with previously taxed contributions in the amount of $22,586.75, rather than the $21,765.02 amount that was stipulated by the parties.  As shown in the following table, the taxable amount of the Transfer Refund, based on the amount of petitioner's previously taxed contributions as credited in the notice of deficiency, is less than it would be if the stipulated amount were used:

| Taxable Amount of Transfer Refund Per Notice of Deficiency | | Taxable Amount of Transfer Refund Per Stipulation | |
|---|---|---|---|
| Transfer Refund | $158,680.98 | Transfer Refund | $158,680.98 |
| less: Previously taxed contributions | -22,586.75 | less: Previously taxed contributions | -21,765.02 |
| Taxable Amount | $136,094.23 | Taxable Amount | [1]$136,915.96 |

[1]  This amount consists of $136,681.18 of earnings on petitioner's previously taxed contributions and $234.78 of employer "pick-up" contributions.  See *supra* note 5 and the associated text.

System to the Pension System.[15]  Accordingly, the Transfer Refund received by petitioner does not qualify for forward averaging under section 402(e)(1).  See Hamilton v. Commissioner, T.C. Memo. 1994-633 (addressing whether a taxpayer had received the "balance to the credit" in the context of whether the taxpayer was entitled to compute tax on a transfer refund using the 10-year forward averaging method set forth in section 402(e)(1)); Hoppe v. Commissioner, T.C. Memo. 1994-635 (same); Pumphrey v. Commissioner, T.C. Memo. 1995-469 (same); see also Dorsey v. Commissioner, T.C. Memo. 1995-97 (addressing whether a taxpayer had received the "balance to the credit" in the context of whether a Transfer Refund distribution qualified for tax-free rollover treatment under section 402(a)(5); Brown v. Commissioner, T.C. Memo. 1995-93 (same); cf. Wheeler v. Commissioner, T.C. Memo. 1993-561.

In closing, we note that in a case decided earlier this year, the United States District Court for the District of Maryland reached the same conclusion in respect of the lump sum

---

[15] In view of our conclusion that petitioner did not receive the "balance to the credit" when he transferred from the Retirement System to the Pension System, we are not required to decide whether the Transfer Refund became payable to petitioner on account of his separation from the service.  We note, however, that we have previously held in other cases, on facts indistinguishable from those herein, that a transfer refund distribution is not paid on account of an employee's separation from the service, but rather on account of the employee's election to transfer from the Retirement System to the Pension System.  Dorsey v. Commissioner, supra; Brown v. Commissioner, supra; Hylton v. Commissioner, T.C. Memo. 1995-27.

distribution issue that this Court has reached.  Sites v. United States, 75 AFTR 2d 95-2504, 95-1 USTC par. 50,280 (D. Md. 1995). The final paragraph of the district court's analysis deserves to be quoted:

> The Court believes that the statutory analysis and reasoning of Hoppe [v. Commissioner, T.C. Memo. 1994- 635] is sound.  Because the Retirement System and Pension System were both maintained by Taxpayer's employer, the State of Maryland, they are to be aggregated for purposes of determining the "balance to the credit" of an employee under section 402(e)(4)(A). Whereas Taxpayer received a refund of his contributions and the accumulated interest, his service credits were transferred to and remained within the Pension System. * * *  By choosing to transfer to the Pension System, * * * [Taxpayer] opted * * * to receive a refund of his contributions and accumulated interest along with reduced annuity payments in the future.  Thus, in effect, Taxpayer elected to receive the "balance to the credit" of his account in two-parts: the refund payment and the future annuity payments.  Consequently, he did not receive the "balance to the credit" of his account on * * * [the Transfer Refund date].  Id.  [75 AFTR 2d 95-2504, 95-1 USTC par. 50280 at 88,031].

Section 72(t) Additional Tax Issue

We turn next to respondent's determination that petitioners are liable for the 10-percent additional tax imposed by section 72(t).

Section 72(t) provides for a 10-percent additional tax on early distributions from qualified retirement plans.  Subsection (1), which imposes the tax, provides in relevant part as follows:

> (1) Imposition of additional tax.--If any taxpayer receives any amount from a qualified retirement plan * * * the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

By virtue of subparagraph (2)(A) of section 72(t), the 10-percent additional tax does not apply to certain distributions. Specifically, petitioners rely on clause (2)(A)(v), which provides that the 10-percent additional tax does not apply to distributions "made to an employee <u>after</u> separation from service after attainment of age 55". (Emphasis added.) However, this clause does not apply in the present case because the Transfer Refund was paid to petitioner well <u>before</u>, and not <u>after</u>, he separated from service.[16]

Even though the result we reach here may seem harsh to petitioners, we may not ignore the plain language of the statute and, in effect, rewrite it in order to achieve what might be viewed by them as the more equitable result. See <u>Hildebrand v. Commissioner</u>, 683 F.2d 57, 58 (3d Cir. 1982), affg. T.C. Memo. 1980-532; <u>Zadan v. Commissioner</u>, T.C. Memo. 1993-85. After all, the power to legislate is exclusively the power of Congress and not of this Court or any other. See <u>Iselin v. United States</u>, 270 U.S. 245, 250 (1926).

In view of the foregoing, we sustain respondent's determination that petitioners are liable for the 10-percent

---

[16] We also observe that the Transfer Refund was paid to petitioner "on account of" his election to transfer from the Retirement System to the Pension System and not "on account of" his separation from the service. See <u>Hylton v. Commissioner</u>, T.C. Memo. 1995-27 (addressing the maxim "causa causae est causa causati"); see also <u>Adler v. Commissioner</u>, T.C. Memo. 1995-148, on appeal (4th Cir. 1995); <u>Dorsey v. Commissioner</u>, 1995-97; <u>Brown v. Commissioner</u>, T.C. Memo. 1995-93.

additional tax imposed by section 72(t).  See O'Connor v. Commissioner, T.C. Memo. 1994-170; Wheeler v. Commissioner, T.C. Memo. 1993-561; cf. Dorsey v. Commissioner, T.C. Memo. 1995-97; Brown v. Commissioner, T.C. Memo. 1995-93.

Interest

Finally, having concluded that petitioners are liable for the deficiency in income tax, including the 10-percent additional tax imposed by section 72(t), we address petitioner's contention that they should be relieved of liability for interest on the deficiency.

Petitioners impressed the Court as honest and conscientious taxpayers.  Unfortunately, they experienced some frustration during the examination of their 1990 income tax return.  Although the Court can appreciate petitioners' frustration, we must nevertheless note that matters involving interest do not, as a general rule, fall within the scope of this Court's jurisdiction. Perkins v. Commissioner, 92 T.C. 749, 752 (1989); LTV Corp. v. Commissioner, 64 T.C. 589, 597 (1975); see sec. 6404(e); Marine v. Commissioner, 92 T.C. 958, 994 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991); 508 Clinton St. Corp. v. Commissioner, 89 T.C. 352 (1987).  Although there are certain narrowly defined exceptions to this rule, none of them apply in this case.  See, e.g., sec. 7481(c); Bax v. Commissioner, 13 F.3d 54 (2d Cir. 1993).  In short, it is simply not within our power in this case to relieve petitioners from any part of the interest on the deficiency that will be due.

<u>Conclusion</u>

In order to give effect to our disposition of the disputed issues,

<u>Decision will be entered</u>

<u>for respondent</u>.[17]

---

[17] On brief, respondent laconically claims an increased deficiency.  Sec. 6214(a).  See <u>supra</u> notes 9, 14.  However, we think such claim was not properly raised, and we will not allow it.