**In re Shelly H. McDONALD, and Timothy J. McDonald, Debtors.**

**No. 06–60788–13.**

United States Bankruptcy Court, D. Montana.

Feb. 7, 2007.

Richard A. Ramler, Belgrade, MT, for Debtors.

## MEMORANDUM OF DECISION

RALPH B. KIRSCHER, Bankruptcy Judge.

On September 28, 2006, Debtors filed this chapter 13 case. Trustee, Robert G. Drummond, filed an objection to confirmation of Debtors' plan, doc. no. 13, asserting among other grounds that the "Debtors' plan fails to meet the disposable income requirements appearing at 11 U.S.C. § 1325(b)(1)(B). The Debtors' Form B22C, Line 58, lists the Debtors' disposable income in the amount of $199.64 per month. The Debtors' plan payment is $200.00 per month for sixty (60) months. The plan payment is insufficient to pay the disposable income to the class of 'unsecured creditors.' The plan payment fails to take into account the administrative expenses to be paid under paragraph 2(a) and the Trustee's fees." The Court scheduled confirmation for December 7, 2006.

Based on agreement, Debtors' through their attorney, Nikolaos G. Geranios, of Missoula, Montana, and the Trustee, Robert G. Drummond ("Trustee"), of Great Falls, Montana, stipulated to the facts pertinent to one of Trustee's objections to confirmation. The Court directed that briefs be filed on or before December 26, 2007, after which the Court would take the matter under advisement. The briefs have been filed; the Court has reviewed the stipulated facts, the briefs and applicable law and this contested matter is ready for a decision. This memorandum of decision contains the Court's findings of fact of conclusions of law.

## FACTS

The parties filed the following stipulated facts:

1. This Stipulation of Facts relates to the Chapter 13 Bankruptcy case of Timothy and Shelly McDonald filed in the United States Bankruptcy Court for the District of Montana on September 28, 2006.

2. The Debtors have submitted a Form B22C calculating their monthly disposable income. The parties stipulate and agree that the Debtors' annualized current monthly income is demonstrated on Form B22C equals $77,004.00. The applicable median family income for the State of Montana for a household consisting of four members equals $52,384.00. Thus, the Debtors are above median income Debtors.

3. The Debtors' Form B22C calculates their monthly disposable income in the amount of $199.00.

4. The Debtors' Chapter 13 Plan provides that the Debtors will commit $200.00 each month for a period of sixty (60) months. The Debtors' plan provides for an administrative expense to be paid to the Debtors' attorney in the

amount of $1,400.00. Additionally, the Trustee's fees are calculated to be in the amount of 10%.

5. After the administrative expenditures referenced above, funds available to pay the class of general unsecured creditors will equal $9,400.00.

At hearing held on December 7, 2006, the Court determined that it would take up the matter of the Trustee's objection based upon the disposable income requirement. The Trustee has an outstanding objection dealing with the Debtors' good faith, which the Court determined it would take up after the disposable income matter had been determined, given technical difficulties arising at the time of hearing.

### ISSUES PRESENTED

Does Debtors' proposed plan meet the disposable income requirement of 11 U.S.C. § 1325(b)(1)(B) if Debtors do not pay to the unsecured creditors all of Debtors' projected disposable income to Trustee during the applicable commitment period? Can administrative expenses for attorneys fees[1] and trustee fees be deducted from all of the projected disposable income received by the Trustee during the applicable commitment period prior to distributions to the unsecured creditors?

### DISCUSSION

Debtors are above median income earners. Given that fact, Debtors pursuant to 11 U.S.C. § 1325(b)(3) determine amounts to be reasonably necessary to be expended under § 1325(b)(2) by applying § 707(b)(2)(A) and (B)[2]. Debtors have completed the Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C"), doc. no. 3. The issues currently before the Court do not involve Parts I, II or III of Form B22C. The pending contested issue[3] does, however, involve Parts IV and V, particularly line 50 that calculates the Chapter 13 administrative expenses for the Trustee based upon a multiplier determined by the Executive Office of the United States Trustees. The Montana multiplier for this case is 8.90 %. The amount on Line 49 for payments on priority claims is $0.00.

Debtors have calculated line 50 as $19.49, based on an average monthly plan payment of $219.00. The amount in line 50 is part of the allowable deductions for debt payment provided at line 51. The amount in line 51 then becomes part of line 52 that is the total of all deductions allowed under § 707(b)(2). The amount in line 52 then is stated in line 56 and becomes a part of the amount stated in line 57. The amount in line 57 is then deducted from line 53 and becomes the amount stated in line 58 and is identified as monthly disposable income under § 1325(b)(2). The amount of $199.64 is Debtors' monthly disposable income. *See* stipulated fact no. 3.[4]

What is the import of the amount of $199.64 calculated in line 58 for Debtors' monthly disposable income under

---

1. For purposes of this decision, the Court will not consider whether attorneys fees may be deducted from disposable income identified in line 58 as Debtors, through their attorney, have conceded that issue and acknowledge "that their plan must be modified to account for those fees." Debtors' brief, doc. no. 20, page 8.

2. The Court notes that an amendment (S.4044) to § 1325(b)(3) became effective on December 20, 2006, that involves charitable contributions.

3. See note 1.

4. The stipulated fact of $199.00 is slightly less than the calculated amount of $199.64 stated in Debtors' Form B22C.

§ 1325(b)(2)? One commentator instructively states:

> ... the sponsors of BAPCPA intended the means test to "channel" into Chapter 13 those Chapter 7 debtors with sufficient income to make meaningful debt payment. In fact, for debtors whose income is above the applicable median (and therefore subject to the means test), the test has the effect of computing, almost exactly, the "disposable income" that the debtor would be required by § 1325(b) to pay on account of unsecured claims in a case filed under Chapter 13.

Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 AM. BANKR. L.J. 231, 240. He bases this conclusion, in part, on the following:

> The Bankruptcy Reform Act of 2005 asks the very fundamental question of whether repayment is possible by an individual. It is this simple: If repayment is possible, then he or she will be channeled into chapter 13 of the Bankruptcy Code which requires people to repay a portion of their debt as a precondition for limited debt cancellation.... This bill does this by providing for a means-tested way of steering people ... who can repay a portion of their debts, away from chapter 7 bankruptcy. (Statement of Senator Charles Grassley, March 1, 2005, 151 Cong. Rec. S1856.)

*Id.* at 231. However, a special distinction on line 50 is made for Chapter 13 administrative expenses which probably limits the expenses that may be included in line 49 for the calculation of payments on priority claims. Judge Wedoff concludes in considering the claims to be included in line 49 as follows:

Though straightforward, this provision appears to raise at least two questions: First, a debtor might seek to deduct not only priority claims that are actually outstanding at the time of the bankruptcy filing, but also hypothetical priority claims that might be anticipated over the five year period measured by the means test. For example, a Chapter 13 debtor's attorney's fees are a priority administrative expense under §§ 330(a)(4)(B), 502(b)(2), and 507(a)(2), and it might be argued that a debtor would reasonably incur such a priority claim in pursuing the five-year Chapter 13 plan hypothesized by the means test. This argument, however, is unlikely to be persuasive. As discussed below at Part V.C.3, the means test specifically provides for one type of potential administrative expense in connection with a hypothetical Chapter 13 case—the fees assessed by the standing Chapter 13 trustee. No similar deduction is specified for debtor's attorney's fees, and so it is likely that a deduction for such fees—or any other hypothetical priority claims—would be denied....

*Id.* at 273.[5]

Trustee in the case *sub judice* contends that Debtors must commit $12,000 [60 times $200] to fund the "general" unsecured creditors in order to meet the disposable income requirement and not $9,400, calculated by deducting $1,200 for trustee's fees and $1,400 for attorney's fees from $12,000.

The trustee relies upon *In re Wilbur*, 344 B.R. 650 (Bankr.D.Utah 2006), for his argument. Judge Thurman in *Wilbur* considered whether the reference in § 1325(b)(1)(B) to "unsecured creditors" referred to both priority and nonpriority

---

**5.** The discussion in 8 COLLIER ON BANKRUPTCY, ¶ 1325.08[5][c][I] (15th ed. rev.), reaches different conclusions concerning the payment of attorneys fees as an administrative expense and as an unsecured claim.

unsecured creditors. He concluded that "unsecured creditors" refer only to nonpriority unsecured creditors. *Id.* at 655. Judge Thurman reasoned, in part, that

> ... the terms of § 707(a)(2) and Form B22C require the debtor to account for chapter 13 payments to be made to priority unsecured creditors *before* reaching the debtor's presumptive 'projected disposable income.' Section 1325(b)(1)(B) then requires the debtor to return the 'projected disposable income' to 'unsecured creditors.' If the Court interpreted 'unsecured creditors' to include priority unsecured creditors, the debtor would, in effect, be double-counting.

*Wilbur,* 344 B.R. at 654. *Contra* 8 COLLIER ON BANKRUPTCY, ¶ 1325.08[5][c][I] (15th ed. rev.).

As the contested issue before this Court involves the trustee's fee, this Court does not need to consider whether "unsecured creditor" includes priority administrative expense claimants, i.e., debtors' attorney, that may arguably, but doubtfully, be entitled to a priority expense under §§ 330(a)(4)(B), 502(b)(2), and 507(a)(2). As Form B22C deducts the trustee's expense in line 50, Debtor would be double-counting the deduction if he again deducted it from the projected disposable income (monthly disposable income, line 58 of Form B22C).

Consequently, Debtors must add the amount identified on line 50 for the trustee's fee to the monthly disposable income under line 58 when calculating the plan payment in Debtors' chapter 13 plan. Given Debtors' concession concerning attorney's fees and this Court's holding concerning trustee's fees, Debtors are required to fund their plan with a minimum monthly plan payment of $242.46 [199.64 × 60 = 11,978.40; 19.49 × 60 = 1,169.40 (trustee's fee); 11,978.40 + 1,169.40 +

1,400 (attorney's fees) = 14,547.80; 14,547.80/60 = 242.46]. Debtors do not list any impaired secured creditors, any arrearages on unimpaired secured creditors or any priority creditors in their schedules or in their plan that require payment by the Trustee through the Debtors' plan.

Based upon the foregoing analysis, the court will enter the following separate order:

IT IS ORDERED that Trustee's objection to confirmation involving the deduction of administrative expenses for trustee's fees from all of the projected disposable income received by the Trustee during the applicable commitment period prior to distributions to the unsecured creditors is sustained; that Debtor must add the trustee's fees, line 50, to the projected disposable income (monthly disposable income from line 58 of Form B22C); that Debtor shall file on or before February 16, 2007, an amended plan consistent with the foregoing analysis; that Debtors' amended plan is scheduled for confirmation on March 8, 2007, at 9:00 a.m., or as soon thereafter as counsel can be heard, in the BANKRUPTCY COURTROOM, RUSSELL SMITH COURTHOUSE, 201 EAST BROADWAY, MISSOULA, MONTANA, at which time the Court will take up any additional objections to confirmation.