**In re Robert & Judith AMATO, Debtors.**

**No. 06–20612 (MBK).**

United States Bankruptcy Court, D. New Jersey.

March 20, 2007.

John Zimnis, Esquire, Law Offices of Peter E. Zimnis, Trenton, NJ, Attorney for the Debtors.

Howard Schmidt, Esquire, Robbinsville, NJ, Attorney for Albert Russo, Standing Chapter 13 Trustee.

MICHAEL B. KAPLAN, Bankruptcy Judge.

## I. INTRODUCTION

On October 31, 2006, the Debtors, Robert and Judith Amato, filed a voluntary Chapter 13 petition and Chapter 13 plan, which proposed to pay Albert Russo, Standing Chapter 13 Trustee ("Trustee") the sum of $800 for sixty (60) months. Under the plan, payments were to be made to general unsecured creditors only, on a *pro rata* basis, as there were no secured claims to be paid. The Debtors' Schedule I ("Current Income of Individual Debtor(s)") and Schedule J ("Current Expenditures of Individual Debtor(s)") indicated a monthly disposable income of $782.90. In contrast, Line 58 of the Debtors' Official Bankruptcy Form B22C ("Chapter 13 Statement of Current Monthly Income and Calculation of Applicable Commitment Period and Disposable Income")[1] fixed Debtors' monthly disposable income under 11 USC § 1325(b)(2). Line 15 of Form B22C shows the Debtors' annualized current monthly income at $120,402.[2] By order dated January 29, 2007, the Court confirmed the Debtors' plan at $800 for two (2) months and $940 for fifty-eight (58) months. The difference

1. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") became effective on October 17, 2005. One of the most significant modifications is the new § 707(b), commonly referred to as the "means test." The means test reflects a formula that incorporates figures used by the IRS. In order to implement the use of the means test, BAPCPA requires the debtor to file a statement of current monthly income. Fed. R. Bankr.P. 1007(b)(1). The Interim Rules and Official Forms Implementing the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 contain three forms to comply with the reporting and calculation of current monthly income. Form B22 has three versions, A, B and C, for use in Chapters 7, 11 and 13, respectively. The forms contain a series of line entries, divided into columns providing for separate entries by the debtor and the debtor's spouse. Form B22C is used to determine the amount of "disposable income" an above median income Chapter 13 debtor has available to pay to unsecured creditors in his/her plan. 11 U.S.C. § 1325(b)(3).

2. This annualized income places the Debtors far above New Jersey's median family income for Debtors' household size. For above median income debtors, BAPCPA has supplanted the pre-BAPCPA practice of assessing the reasonableness of the Debtors' actual expenses, as they are reflected in Schedule J. The amended Code now provides express direction as to the particular expenses, and the amount of those expenses, that can be deducted from the Debtors' current monthly income to calculate their "disposable income."

between the Debtors' proposed plan and the amounts confirmed by the Trustee rests with additional sums to be paid for Debtors' attorney's fees and the trustee's commission. On February 6, 2007, the Debtors filed a Modified Plan, seeking to limit the payments to $800 per month for sixty (60) months, with the aforementioned attorney's fees and commissions to be paid from the $48,000 "pot plan."

In essence, the Debtors contend that the term "unsecured creditors," as found in § 1325(b)(1)(B) include unsecured creditors holding both priority (including administrative priority) and non-priority unsecured claims. Consequently, the Debtors argue that the Trustee should not have added onto the Debtors' original "pot plan" the amounts necessary for payments of attorney's fees and the trustee's commission. The Trustee has objected to the Modified Plan, arguing that the Debtors are obligated to pay the sum reflected on Line 58 of Form B22C to unsecured creditors with non-priority claims.

On March 15, 2007, the Court conducted a hearing and denied the Debtors' motion. This memorandum opinion is in support of and amplifies the Court's bench ruling.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(L). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## III. DISCUSSION

Section 1325 of the Bankruptcy Code addresses the requirements for confirmation of a debtor's Chapter 13 plan. Subsection (a) mandates plan confirmation if certain specified requirements are met. Subsection (b) is effected "[i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan." 11 U.S.C. § 1325(b). The dispute herein concerns the meaning and scope of the term "unsecured creditors" found in 11 U.S.C. § 1325(b), as amended by BAPCPA. In his letter submission to the Court, Debtors' counsel submits the following:

> There is no authority under BAPCPA to state that the "disposable income" amount is supposed to be applied *exclusively* to the unsecured creditors, while the Trustee commission and the attorney fee require an additional payment. Now true, BAPCPA did amend 11 *U.S.C.* § 1325(b)(1)(B) to include the words "unsecured creditors," but my no means did it say that the "disposable income" is paid *only* to the unsecured creditors.

Unfortunately for the Debtors, the language of the Code section does not lend support to Counsel's argument. Rather, the very language of the Code section contradicts any such interpretation. Pertinently, § 1325(b)(1)(B) provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that **all** of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to **unsecured creditors** under the plan.

(Emphasis added). The statutory language is unambiguous and clearly directs that all of a debtor's "disposable income" is

to be paid over to unsecured creditors, leaving nothing for payment to other classes of creditors (*i.e.*, administration, priority or secured claims).[3] Thus, the issue before the Court is not whether payment of disposable income reflected in Line 58 of Form B22C is restricted to unsecured creditors; rather, the Court must address the scope of the term "unsecured creditors" and determine whether claims for attorney's fees and trustee commissions fall within this class.

At the hearing on the matter *sub judice*, the Trustee brought to the Court's attention two recent decisions which support the Trustee's contention that administrative expenses for attorney's fees and trustee commissions should not be deducted from the projected disposable income received by the Trustee during the applicable commitment period, prior to distributions to the unsecured creditors. In this regard, the Trustee referred the Court to the decision in *In re Wilbur*, 344 B.R. 650 (Bankr.D.Utah 2006), in which Judge Thurman considered whether the reference in § 1325(b)(1)(B) to "unsecured creditors" referred to both priority and non-priority unsecured creditors. At the outset, Judge Thurman acknowledged that whether or not an unsecured creditor is entitled to priority treatment (including administrative priority), it remains an unsecured creditor despite this treatment. Thus, the reference to "unsecured creditors" would appear, at first blush, to refer both to priority and non-priority unsecured creditors. Judge Thurman noted that the court's determination of the plain meaning of the statute should be the end of the court's inquiry, unless "the plain language is at odds with the legislature's manifest intent or unless a literal application of the statute would produce an absurd result."

*Wilbur*, 344 B.R. at 653. Judge Thurman reasoned in fact, that both such exceptions were applicable. Judge Thurman stated, in part, that:

> ... the terms of § 707(a)(2) and Form B22C require the debtor to account for chapter 13 payments to be made to priority unsecured creditors before reaching the debtor's presumptive "projected disposable income." Section 1325(b)(1)(B) then requires the debtor to return the "projected disposable income" to "unsecured creditors." If the Court interpreted "unsecured creditors" to include priority unsecured creditors, the debtor would, in effect, be double-counting. Allowing the debtor to double-count in this fashion would undermine the purpose and efficacy of § 707(b)(2) and Form B22C. This would be an absurd result.

*Id.* at 654. Thus, the court concluded that the term "unsecured creditor" as used in § 1325(b)(1)(B) refers to non-priority unsecured creditors only. *Id.* at 655.

Relying on *Wilbur*, the court in *In re McDonald*, 361 B.R. 527, 531 (Bankr.D.Mt. 2007) agreed with Judge Thurman that a debtor who is allowed to deduct trustee's fees in calculating its monthly income in Form B22C "would be double-counting the deduction if he again deducted it from the projected disposable income." In *McDonald*, as here, the issue before the court was whether administrative expenses for attorney fees and trustee fees could be deducted from all of the projected disposable income received by the trustee during the applicable commitment period. While electing not to consider whether attorney's fees may be deducted from disposable income,[4] the court concluded that the debtors had to add the trustee's fees to their monthly disposable income as determined

---

**3.** Administration, priority and secured claims are already included as deductions from disposable income in Form B22C.

**4.** The court did not address this issue because the debtor acknowledged that it was necessary to modify its plan to account for attorney's fees. However, the court did note the following with respect to attorney's fees:

> [T]he means test specifically provides for one type of potential administrative expense

in Form B22C when calculating their plan payment. *McDonald,* 361 B.R. at 531.

This Court is persuaded by the holdings in *Wilbur* and *McDonald, supra,* that claims for attorney's fees and trustee commissions do not fall within the class of "unsecured creditors" found in 11 U.S.C. § 1325(b), as amended by BAPCPA. With respect to the payment of the trustee's commissions, it is clear that Line 50 of the Debtors' Form B22C provides for a deduction of $47.20 from the Debtors' available disposable income, by applying the 5.9% multiplier set by the Office of the United States Trustee. A further reduction in the amounts to be paid to general unsecured creditors for the trustee's commission would be an example of double-counting, proscribed by the Court in *McDonald.*

With respect to attorneys fees, the Court notes that Form B22C does not specifically reference a deduction for such fees under either Line 49 (Payments on priority claims) or Line 50 (Chapter 13 administrative claims) of Subpart C, Part IV. Due to the insufficient time to adopt modifications to the Federal Rules of Bankruptcy Procedure between the enactment of BAPCPA and its effective date, all courts (including the Bankruptcy Court for the District of New Jersey) adopted certain uniform "interim rules." Interim Rule 1007(b)(6) requires an individual debtor in a chapter 13 case to file a statement of current monthly income. There was time, however, to adopt Official Forms. BAPCPA amended 28 U.S.C. § 2075 specifically to require the Supreme Court to "prescribe a form for the statement required under § 707(b)(2)(C)."

As discussed above, Official Form B22C is intended to implement the requirements of the statute and the applicable requirements of the bankruptcy rules with regard to the reporting and calculation of both current monthly income and disposable income. That the Form B22C fails to make any reference to attorneys fees is an unfortunate omission and continues an apparent knowing disregard for the need to compensate attorneys representing debtors' interests. The situation presented does not differ dramatically from that faced by the U.S. Supreme Court in *Lamie v. United States Trustee,* 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), in which the Court held that Bankruptcy Code § 330(a)(1), as amended by the Bankruptcy Reform Act of 1994, does not authorize compensation to a debtor's attorney out of the estate unless the attorney is employed as authorized by Bankruptcy Code § 327. *Lamie,* 540 U.S. at 538, 124 S.Ct. 1023. In rejecting the argument that the omission of the phrase "or to the debtor's attorney" from § 330(a)(1)[5] ren-

in connection with a hypothetical Chapter 13 case—the fees assessed by the standing Chapter 13 trustee. No similar deduction is specified for debtor's attorney's fees, and so it is likely that a deduction for such fees—or any other hypothetical priority claims—would be denied ...

*McDonald,* 361 B.R. at 530, *citing* Eugene R. Wedoff, *Means Testing in the New § 707(b),* 79 AM. BANKR. L.J. 231, 240.

5. The Act altered § 330(a) by deleting "or to the debtor's attorney" from what was § 330(a) and is now § 330(a)(1). This change created an apparent legislative drafting error in the current section. The section is left with a missing "or" that infects its grammar and

its inclusion of "attorney" in what was § 330(a)(1) and is now § 330(a)(1)(A) defeats the parallelism that otherwise marks the relationship between current §§ 330(a)(1) ("trustee, ... examiner, [or] professional person") and 330(a)(1)(A) ("trustee, examiner, professional person, or attorney"). In *Lamie, supra,* the Petitioner argued for the existence of ambiguity by comparing the present statute with its predecessor, proffering that "[e]ither Congress inadvertently omitted the 'debtor's attorney' from the 'payees' list, on which the court of appeals relied, or it inadvertently retained the reference to the attorney in the latter, 'payees' list." *Lamie,* 540 U.S. at 533, 124 S.Ct. 1023.

ders the existing statutory text ambiguous, so as to require resort to the legislative history, the Court held:

> Petitioner's argument stumbles on still harder ground in the face of another canon of interpretation. His interpretation of the Act-reading the word "attorney" in § 330(a)(1)(A) to refer to "debtors' attorneys" in § 330(a)(1)-would have us read an absent word into the statute. **That is, his argument would result "not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope."** *Iselin v. United States,* 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566 (1926). **With a plain, nonabsurd meaning in view, we need not proceed in this way. "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted."** *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).

> Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results from "deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill." *United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) (*citing Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962)). (Emphasis added)

*Lamie,* 540 U.S. at 538, 124 S.Ct. 1023.

The Court feels constrained by the language of Official Form B22C and, thus, will not read more into the language of the set forth in the prescribed Official Form so as to provide for the deduction of debtor's attorneys fees. Accordingly, neither the Trustee's commission nor the Debtors' attorney's fees in this case should be deducted from the projected disposable income received by the Trustee during the applicable commitment period, as provided in the Debtors' modified plan.

## IV. CONCLUSION

The Debtors' modified Chapter 13 plan is denied and the case will proceed under the original plan, confirmed on January 29, 2007.