**In re Anthony Charles ECHEMAN, Jodi Lynn Echeman, Debtors.**

**No. 06–32551.**

United States Bankruptcy Court, S.D. Ohio, Western Division, at Dayton.

Nov. 7, 2007.

Randal A. Harvey, Troy, OH, for Debtors.

## DECISION SUSTAINING CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

LAWRENCE S. WALTER, Bankruptcy Judge.

This matter is before the court on the Chapter 13 Trustee's Objection to Confirmation [Doc. 21] and Memorandum Brief in Support [Doc. 28]; the Debtor's Memorandum Brief in Opposition [Doc. 32]; and the Trustee's Reply Brief [Doc. 33]. The court also considers the Joint Stipulation of Facts [Doc. 31] filed by the parties.

### *FACTUAL AND PROCEDURAL BACKGROUND*

The following are the relevant facts as agreed to by the parties in their Joint Stipulation of Facts and from the documents filed of record with the court. The Debtors, Anthony and Jodi Echeman ("Debtors"), filed their Chapter 13 bankruptcy petition on September 11, 2006. Their original schedules reveal priority unsecured claims for child support arrearages totaling $21,272.00 and nonpriority unsecured claims amounting to $69,486.00.[1]

The Debtors, who have above-median family income status,[2] also completed the "means test" on Form B22C [3] calculating

---

1. The Debtors amended their original schedules to add an additional nonpriority unsecured creditor with a claim of $1,581.20. [Doc. 24].

2. "Median family income" is defined at 11 U.S.C. § 101(39A).

3. All chapter 13 debtors are required to complete Official Form B22C pursuant to Interim Bankruptcy Rule 1007(b)(6). The form is de-

their monthly disposable income to be $334.62.[4] The Debtors arrived at this monthly disposable income amount after making deductions on Form B22C for payments toward their priority domestic support obligation claims over the life of the plan.[5] Based on their calculations on Form B22C, the Debtors proposed a 60–month plan paying a 4% dividend to nonpriority unsecured creditors.

On October 25, 2006, the Trustee filed an objection to confirmation of the Debtors' Chapter 13 plan. In relevant part, the Trustee's objection is that the Debtors incorrectly propose to pay both their priority unsecured claims as well as their nonpriority unsecured claims out of their monthly disposable income as calculated on Form B22C. According to the Trustee, the Debtors must instead pay their entire monthly disposable income amount of $334.62 to their nonpriority unsecured creditors for 60 months in an aggregate amount of $20,077.20. Given their calculated disposable income and their nonpriority unsecured debt totaling $69,486.00, the Trustee asserts that the Debtors must pay nonpriority unsecured creditors a dividend of 29% to meet the requirements of 11 U.S.C. § 1325(b)(1)(B).

In their responsive pleading, the Debtors argue that the language of § 1325(b)(1)(B) allows them to apply their monthly disposable income of $334.62 to both priority and nonpriority unsecured claims leaving a much smaller 4% dividend for nonpriority unsecured creditors.

## ISSUE TO BE DECIDED

Does 11 U.S.C. § 1325(b)(1)(B)'s requirement that the Debtors' projected disposable income be applied to make payments to "unsecured creditors" mean that the Debtors must pay their entire projected disposable income to nonpriority unsecured creditors or may they also pay their priority unsecured creditors out of their projected disposable income?

## LEGAL ANALYSIS

■ This court has previously grappled with aspects of 11 U.S.C. § 1325(b) modified by the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Specifically, the court had to parse the phrases "projected disposable income" and "applicable commitment period" found in 11 U.S.C. § 1325(b)(1)(B). *See In re Kolb*, 366 B.R. 802 (Bankr.S.D.Ohio 2007). Now, the court must return to the same short subsection to analyze the meaning and scope of another BAPCPA-added phrase: "unsecured creditors."

■ Bankruptcy Code Section § 1325(b)(1)(B) provides that if the trustee or an unsecured creditor objects to confirmation of a debtor's proposed plan, the court may only confirm the plan if it proposes to pay creditors in full or "provides that all of the debtor's projected disposable income ... will be applied to make payments to *unsecured creditors* under the plan." 11 U.S.C. § 1325(b)(1)(B) (italics added). Generally, when the language of a statute is clear and no absurd results are

signed as a practical means of calculating current monthly income, allowed expenses, and disposable income.

4. Actually, the Debtors' Form B22C as filed reveals monthly disposable income of $511.00. However, both parties agree in the Stipulation of Facts that the Debtors' form

contains errors such that actual disposable income is only $334.62.

5. The Debtors' Form B22C includes a monthly deduction on Line 49 of $354.54 for the priority domestic support obligation claims. This equates to $21,272.40 over 60 months matching the Debtors' Schedule E filing.

produced, the court's sole function is to enforce the statute according to its terms. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). Based on the language of § 1325(b)(1)(B), it would appear at first glance that a debtor is required to pay his or her projected disposable income to all "unsecured creditors" which simply means all creditors who are not secured. *See In re Wilbur*, 344 B.R. 650, 653 (Bankr.D.Utah 2006). Under this seductively simple plain meaning view advanced by the Debtors in this case, the "unsecured creditors" in § 1325(b)(1)(B) would appear to refer to both priority and nonpriority unsecured creditors since both sets of creditors are indisputably not secured.

 However, interpretation of a statutory section by examining its plain language requires more than reviewing words or sub-sections in isolation; it requires consideration of the context, reading all relevant statutory provisions together as a whole. *In re Rufener Construction, Inc.*, 53 F.3d 1064, 1067 (9th Cir.1995); *In re Mary James, Inc.*, 225 B.R. 635, 639 (E.D.Mich.1998). "Statutory construction ... is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme ... because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law...." *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *accord, Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 58–60, 125 S.Ct. 460, 160 L.Ed.2d 389 (2004).

While a cursory review restricted to the language contained in § 1325(b)(1)(B) may reveal no inherent ambiguity, a brief foray into the statutory language of related subsections, particularly § 707(b)(2), reveals significant ambiguity and strongly supports the conclusion that the drafters intended the phrase "unsecured creditors" to refer only to nonpriority unsecured creditors. Even if this court were to find the language of the subsection plain and unambiguous, the absurd results arising from the Debtor's literal interpretation would compel the same conclusion. *Hartford Underwriters*, 530 U.S. at 6, 120 S.Ct. 1942 (noting that a court's inquiry does not end with the language of the statute if absurd results are produced). A discussion of the somewhat complicated statutory scheme follows.

As noted previously, upon objection from a trustee or unsecured creditor, a debtor must pay the full amount of his or her projected disposable income to "unsecured creditors" through the plan. *See* 11 U.S.C. § 1325(b)(1)(B). Section 1325(b)(2) further defines the term "disposable income" as "currently monthly income received by the debtor ... less amounts reasonably necessary to be expended...." 11 U.S.C. § 1325(b)(2). For above-median family income debtors, like the Debtors in this case, what constitutes "reasonably necessary" expenses is determined by 11 U.S.C. § 707(b)(2)(A) and (B). *See* 11 U.S.C. § 1325(b)(3). Using the lengthy and detailed method provided in § 707(b)(2)(A) and (B), an above-median family income debtor begins by calculating her current monthly income, subtracts certain expenses and deductions from current monthly income, and finally arrives at the monthly disposable income amount which must be paid to unsecured creditors during the applicable commitment period of the plan as "projected disposable income" pursuant to § 1325(b)(1)(B). This calculation is intended to be memorialized in Form B22C.

Significantly, among the deductions allowed under 11 U.S.C. § 707(b)(2)(A), as applied in Form B22C, is a deduction for a debtor's payments on priority unsecured claims. *See* 11 U.S.C. § 707(b)(2)(A)(iv); Form B22C, Line 49. That is, a debtor deducts payment of priority unsecured claims from his or her current monthly income before reaching the calculation of the amount of disposable income available each month for unsecured creditors. The only reasonable interpretation of this statutorily mandated calculation process is that it is designed to determine the amount available to pay nonpriority unsecured creditors after deduction of living expenses and payments to secured creditors and priority unsecured creditors. In other words, the language of § 1325(b)(1)(B), when read in context, makes it clear that the resulting projected disposable income is intended to be paid only to nonpriority unsecured creditors.

In *Wilbur*, the court found this interpretation in keeping with the manifest intent of Congress primarily because the calculation process is substantially unchanged from pre-BAPCPA practice:

> The purpose of the calculations under § 707(a)(2) and Form B22C is, quite clearly, to reach an estimate of how much the debtor can afford to pay non-priority unsecured creditors by deducting all necessary expenses that must be paid before payments are made to "unsecured creditors." Indeed, the deductions allowed under Form B22C track the considerations that a debtor had to make pre-BAPCPA before paying non-priority unsecured creditors.

\* \* \* \* \* \*

Against this background, Congress amended the Bankruptcy Code under the BAPCPA to require the debtor's calculation of his return to unsecured creditors by using Form B22C. Form B22C tracks the pre-BAPCPA calculation of the debtor's return to non-priority unsecured creditors. It requires the debtor to start with gross income and first deduct living expenses. It then asks the debtor to subtract payments to secured and priority creditors. As the basic inquiry under Form B22C is the same as the debtor's former pre-BAPCPA inquiry, it follows that the purpose behind Form B22C should also be the same—to calculate the return to nonpriority unsecured creditors. Thus, it seems clear to this Court that the reference to "unsecured creditors" in § 1325(b)(1)(B) is more specifically referring to non-priority unsecured creditors.

*Wilbur*, 344 B.R. at 654.

Even if this textual analysis did not so clearly yield such a logical result, the alternative view that both priority and nonpriority unsecured creditors are "unsecured creditors" who must be paid projected disposable income obtains an absurd result. Based on the statutory scheme, if a debtor is allowed to deduct priority unsecured claims before reaching the calculation of disposable income and then pay priority unsecured claims out of projected disposable income under § 1325(b)(1)(B), the debtor would in effect be allowed to "double-count" or deduct the same priority claims twice before paying nonpriority unsecured creditors. *See In re Puetz*, 370 B.R. 386, 391 (Bankr.D.Kan.2007); *Wilbur*, 344 B.R. at 654. As noted by the bankruptcy court in *Wilbur*, "[a]llowing the debtor to double-count in this fashion would undermine the purpose and efficacy of § 707(b)(2) and Form B22C ... [t]his would be an absurd result." *Wilbur*, 344

B.R. at 654.[6]

Because of the absurd result created when priority creditors are encompassed by the definition of "unsecured creditors" under 11 U.S.C. § 1325(b)(1)(B), those bankruptcy courts that have addressed the issue have concluded that Congress intended the term "unsecured creditors" to generally refer to nonpriority unsecured creditors only. *See Puetz,* 370 B.R. at 391 (noting that courts should read "unsecured creditors" in § 1325(b)(1)(B) as a "catchall phrase" to address creditors not specifically referenced elsewhere in § 707(b)(2)(A) and Form B22C); *In re Amato,* 366 B.R. 348, 351–52 (Bankr.D.N.J.2007); *In re McDonald,* 361 B.R. 527, 530–31 (Bankr. D.Mont.2007); *In re Alexander,* 344 B.R.

742, 752, n. 7 (Bankr.E.D.N.C.2006); *Wilbur,* 344 B.R. at 654–55.

■ This court is persuaded by the reasoning in these decisions, but must amplify a cautionary note raised in the *Puetz* case. Form B22C does not necessarily provide a deduction for all of a debtor's priority unsecured claims such as, for example, a debtor's anticipated attorney fees. *Puetz,* 370 B.R. at 391. If such a creditor's claim is not specifically and accurately budgeted for by § 707(b)(2)(A), as applied in Form B22C, then payment toward that unsecured creditor's claim, whether priority or nonpriority, must be paid out of projected disposable income pursuant to 11 U.S.C. § 1325(b)(1)(B).[7] *Id.*

**6.** The court believes that its decision rests on an appropriately holistic interpretation of the plain meaning of the language of the statute. To the extent that it invokes the absurdity doctrine, the court recognizes that it is a very limited doctrine, one that generally ascribes a meaning not derived from the plain language of the statute. The Supreme Court has, in bankruptcy cases, reminded the lower federal courts that absurdity does not equate to a poorly written statute, unintended consequences, or even subjectively poor policy choices. *See In re Kolb,* 366 B.R. 802, 807–08 (Bankr.S.D.Ohio 2007) (collecting Supreme Court bankruptcy decisions concerning when it is not appropriate to reach beyond the plain meaning of the statutory text). This court adhered to those principles in *Kolb* and reaffirms them in this decision. However, the result that the Debtor seeks in this case is absurd because this court cannot discern any theoretically plausible congressional purpose for the result advocated by the Debtors. The Debtors do not posit, nor can the court surmise, any justification for subtracting priority unsecured debts to arrive at "disposable income" and then paying the very same priority unsecured debts from the debtor's available monthly "disposable income," all to the detriment of nonpriority unsecured creditors.

**7.** Although not directly before the court, the Debtors raise the issue of the application of § 1325(b)(1)(B) to below-median family income debtors. The Debtors note that below-median family income debtors do not calculate their expenses and deductions based on § 707(b)(2) and Form B22C, but, instead, calculate their expenses based on the pre-BAPCPA method of determining what is "reasonably necessary" by using Schedule J. *See* 11 U.S.C. § 1325(b)(2)(A) and (b)(3). Because Schedule J does not include a line for deducting payments to priority unsecured creditors, the Debtors argue that below-median family income debtors should be allowed to pay both priority and nonpriority unsecured creditors from their projected disposable income pursuant to § 1325(b)(1)(B). The court agrees that if a below-median family income debtor does not otherwise deduct payment of priority unsecured claims from his current monthly income prior to reaching the calculation of his disposable income, then both the debtor's priority unsecured creditors and nonpriority unsecured creditors are to be paid from his projected disposable income pursuant to § 1325(b)(1)(B). This result appears to be the only feasible interpretation to avoid the dueling absurd results of either allowing above-median family income debtors to double-count their priority unsecured claim before paying nonpriority unsecured claims or making below-median family income debtors' plans unfeasible because they have no source of income besides "disposable income" from which to pay priority unsecured claims. *See* David Gray Carlson, *Means Testing: The Failed Bankruptcy Revolution of 2005,* 15 Am. Bankr.Inst. L.Rev. 223, 311–312 (Spring 2007). In essence, the effective result is the

## CONCLUSION

In accordance with the foregoing, the court concludes that the Debtors are not entitled to pay priority unsecured claims from their projected disposable income pursuant to 11 U.S.C. § 1325(b)(1)(B) if the priority unsecured claims have already been deducted pursuant to 11 U.S.C. § 707(b)(2)(A) and Form B22C. In this case, the Debtors took a deduction on Form B22C for their priority unsecured domestic support obligation claims. [*See* Doc. 3, Debtors' Form B22C, Line 49]. Consequently, the Debtors are not entitled to make payments towards these priority unsecured claims out of their "projected disposable income" pursuant to 11 U.S.C. § 1325(b)(1)(B). The Chapter 13 Trustee's objection to confirmation is **SUSTAINED.**

**SO ORDERED.**

same for all debtors—priority unsecured claims can be counted once, no more, no less, in determining which funds are left for nonpriority unsecured creditors.