**In re Christopher and Carol RENTERIA, Debtors.**

**Christopher and Carol Renteria, Appellants,**

v.

**David L. Skelton, Chapter 13 Trustee, Appellee.**

**No. 09cv1400 BEN (POR). Bankr.No. 08–09222.**

United States District Court, S.D. California.

Dec. 17, 2009.

Michael G. Doan, Doan Law Firm, LLP, Carlsbad, CA, for Debtors.

David L. Skelton, San Diego, CA, Trustee.

## MEMORANDUM OF DECISION

ROGER T. BENITEZ, District Judge.

Before this Court is an appeal from an order ("Order") entered by the United States Bankruptcy Court for the Southern District of California, confirming Debtors' plan under Chapter 13 of title 11 of the United States Code (the "Bankruptcy Code"). The appeal has been fully briefed, and the Court finds this appeal suitable for disposition without oral argument.

For the reasons set forth below, the Court **AFFIRMS** the Order.

## BACKGROUND

On September 19, 2008, Debtors filed a petition for bankruptcy protection under Chapter 13 of the Bankruptcy Code. Debtors proposed a plan for confirmation that included payment to priority unsecured creditors, *i.e.,* the Internal Revenue Service and the California Franchise Tax Board.

Appellee, the standing Chapter 13 Trustee ("Trustee"), objected to confirmation of Debtors' plan, arguing it was improper to include these payments because these claimants were effectively already paid through a carveout Debtors received under relevant sections of Chapter 13. Under those sections, Debtors were required to distribute all of their disposable income to unsecured creditors; however, in calculating "disposable income" for this purpose, Debtors were entitled to take, and did take, an allowance for full payment to priority unsecured creditors, including the tax claimants in this case. The Trustee argued that, because these creditors were taken into account in those sections, priority unsecured creditors do not share in the distribution of disposable income under Debtors' plan, rather only non-priority (*i.e.,* general) unsecured creditors receive a distribution. The Trustee concluded Debt-

ors' proposed plan constituted "double-dipping" and reached an "absurd" result. The Trustee argued that, based thereon, Debtors' plan failed to satisfy the requirement that all disposable income be distributed to unsecured creditors.

On March 25, 2009, at oral argument, the Bankruptcy Court agreed, stating

> I think a rational way to review this is to conclude that the phrase, where it's used in this statute, in light of the rest of the statute and the rest of the amendments from 2005, the rest of the changes, *to unsecured creditors* was meant to be those unsecured creditors, other than those priority matters that have to be dealt with. And, therefore, that will be the ruling. I think that's the ruling of the court. So I believe that's the ruling. (3/25/09 Transcript, 8:17–25 (italics added).)

The Bankruptcy Court then granted the parties leave to modify the plan to resolve their disputes.

On May 14, 2009, Debtors filed a Pre–Confirmation Modification to Chapter 13 Plan, providing for a step-up increase in payments to non-priority unsecured creditors and providing for full payment to priority unsecured creditors. With these modifications, the plan satisfied Chapter 13 confirmation requirements. Notwithstanding, the Debtors preserved their right to appeal the issue of whether the term "unsecured creditors" for purposes of Chapter 13 plan confirmation includes only general (non-priority) unsecured creditors, or also includes priority unsecured creditors.

On June 8, 2009, the Court entered an order confirming Debtors' Chapter 13 plan, as modified.

On June 17, 2009, Debtors timely filed a Notice of Appeal. Debtors also timely filed a separate statement of election to have the appeal heard by this Court.

## STANDARD OF REVIEW

This Court has jurisdiction to review Debtors' appeal pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001(e). This Court also has jurisdiction because, despite Debtors' modification to the original proposed plan, a live controversy exists regarding the distribution and percentage payout to general (*i.e.,* non-priority) unsecured creditors, a controversy over which the Court may afford meaningful relief. *See generally Foster v. Carson,* 347 F.3d 742, 745–46 (9th Cir.2003).

■ This appeal raises solely questions of law, which this Court reviews de novo. *In re JWJ Contracting Co., Inc.,* 371 F.3d 1079, 1081 (9th Cir.2004); *In re Pace,* 67 F.3d 187, 191 (9th Cir.1995).

## DISCUSSION

■ The issue in this appeal is whether the term "unsecured creditors" for purpose of Section 1325(b)(1)(B) includes only non-priority unsecured creditors, or whether it also includes priority unsecured creditors.

Section 1325(b)(1)(B) of the Bankruptcy Code provides, in relevant part, that a Chapter 13 plan may only be confirmed if,

> the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period ... will be applied to make payments to unsecured creditors under the plan.

Debtors argue that all unsecured creditors, including priority unsecured creditors, share in the distribution of disposable income under this section. The Trustee disagrees, arguing that only non-priority unsecured creditors share in the distribu-

tion. The Court notes that the amount of disposable income at issue here is $62,400; the amount of Debtors' priority unsecured claims is $22,745.

"The starting point for resolving a dispute over the meaning of a statute begins with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). "When we look to the plain language of a statute in order to interpret its meaning, we do more than view words or sub-sections in isolation. We derive meaning from context, and this requires reading the relevant statutory provisions as a whole." *Carpenters Health and Welfare Trust Funds for California v. Robertson (In re Rufener Const., Inc.)*, 53 F.3d 1064, 1067 (9th Cir.1995). "Statutory construction [ ] is a holistic endeavor." *Smith v. United States*, 508 U.S. 223, 233, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993).

The Court finds that the plain language of Section 1325(b)(1)(B), when viewed in context with related provisions under the Bankruptcy Code, proves the Trustee's argument prevails.

Pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), "disposable income" is calculated using a formula set forth in Section 1325(b)(2) and (3). Under that formula, "disposable income" is calculated by, among other things, deducting from Debtors' income "expenses for payment of all priority claims." *See* 11 U.S.C. § 1325(b)(3) (referring to 11 U.S.C. § 707(b)(2)(A)(iv)). "Priority" claims are defined as including the tax claims at issue in this case. 11 U.S.C. § 507(a)(8).

Pursuant to Federal Rule of Bankruptcy Procedure 1007(b)(6), Debtors are also required to use Bankruptcy Official Form 22C (B 22C) to calculate "disposable income" for purposes of Section 1325. Form 22C likewise provides that, to calculate disposable income, Debtors must deduct from their income "all priority claims, such as priority tax, child support and alimony claims . . ."

It is clear from the above provisions that Debtors' disposable income (which must be distributed to "unsecured creditors" pursuant to Section 1325) already carves out full payment to Debtors' priority unsecured creditors. To then allow priority unsecured creditors to receive a distribution from Debtors' disposable income under the Chapter 13 plan would mean that priority unsecured creditors receive payment from two sources, *i.e.*, the carve-out and Debtors' Chapter 13 plan. The practical effect of this outcome would be that not all of Debtors' disposable income would be used to pay unsecured creditors because, after the priority unsecured creditors are paid from Debtors' disposable income, the carveout from the disposable income that was originally intended for those creditors would remain.

Neither the Ninth Circuit nor any court sitting in the Ninth Circuit has addressed this specific issue. Contrary to Debtors' assertion, *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir.2008) does not dispose of the issue. Kagenveama does not address the issue of "unsecured creditors" for purposes of Section 1325(b), nor does it address the issue of priority claims vis-a-vis a Chapter 13 plan. However, Kagenveama does recognize that statutes cannot be interpreted without regard to the context of their surrounding statutes and should not be construed to reach "absurd" results, an analysis that this Court applies here. (*Id.* at 872–74.)

Other courts have analyzed this issue and concluded that, when viewed in context, the term "unsecured creditors" for purposes of Section 1325(b)(1)(B) includes only general (non-priority) unsecured cred-

**530**

itors and does not include priority unsecured creditors such as the tax claimants in this case.

In *In re Wilbur*, 344 B.R. 650 (Bankr. D.Utah 2006), similar to this case, the debtors calculated their "disposable income" for purposes of Section 1325(b)(1)(B) by deducting the amount required for payment to priority unsecured creditors. The court recognized that, by deducting the amount due to priority unsecured creditors, "[t]he purpose of the calculations ... is, quite clearly, to reach an estimate of how much the debtor can afford to pay non-priority unsecured creditors." *(Id.* at 654.) Based thereon, the court held that, to allow priority claimants to share in the distribution of income to "unsecured creditors" under a Chapter 13 plan, "would, in effect, be double-counting ... Allowing the debtor to double-count in this fashion would undermine the purpose and efficacy of § 707(b)(2) and Form B22C. This would be an absurd result." *(Id.* at 654.) At least one bankruptcy court sitting in the Ninth Circuit has followed the reasoning in *Wilbur,* albeit not in the context of priority tax claimants but rather in the context of administrative expenses for attorneys fees. *See In re McDonald,* 361 B.R. 527 (Bankr.D.Mont.2007)

Similarly, in *In re Echeman,* 378 B.R. 177 (Bankr.S.D.Ohio 2007), the bankruptcy court noted it would be "seductively simple" to interpret Section 1325(b)(1)(B) to apply to all unsecured creditors. *(Id.* at 180.) However, given the carveout afforded to Debtors in calculating "disposable income," the court concluded, "the language of Section 1325(b)(1)(B), when read in context, makes it clear that the resulting projected disposable income is intended to be paid only to nonpriority unsecured creditors." *(Id.* at 181.) *See also In re Puetz,* 370 B.R. 386, 391 (Bankr.D.Kan. 2007) (holding same); *In re Amato,* 366

B.R. 348 (Bankr.D.N.J.2007) (holding same).

The Court notes the above decisions are not binding on this Court. *See generally Hart v. Massanari,* 266 F.3d 1155, 1172–73 (9th Cir.2001). Nonetheless, the Court finds these decisions well-reasoned and persuasive; therefore, the Court sees no reason to deviate from them. As such, the Court finds that the plain language of 11 U.S.C. § 1325(b), when viewed in context, demonstrates that the term "unsecured creditors" under Section 1325(b)(1)(B) means only general (non-priority) unsecured creditors and does not, as Debtors argue, include priority unsecured creditors such as the tax claimants in this case.

## CONCLUSION

For the reasons set forth above, the Court AFFIRMS the confirmation order entered on June 8, 2009 by the United States Bankruptcy Court for the Southern District of California.

**IT IS SO ORDERED.**