ISELIN *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 119. Argued January 12, 1926.—Decided March 1, 1926.

1. Par. 3 of § 800(a) of Revenue Act of 1918, laying taxes on theater and opera tickets sold at newstands, hotels, etc., for more than the "established price" at the ticket office of the theater or opera house, *held* inapplicable to sale by a stockholder of box tickets, issued as an incident of his investment in an opera house company, which were not sold at the box-office and for which there was no established price. P. 247.

2. A statute imposing taxes with particularity, and in plain, unambiguous language, cannot be enlarged by construction to cover other cases omitted through presumable inadvertence of the legislature. P. 250.

3. An administrative practice which enlarges the scope of an unambiguous statute, and which is neither uniform, general, nor long continued, can not be given legal force or effect, nor be accepted as a reason why subsequent reënactment of the statute without change should be taken as a legislative interpretation of its original meaning as justifying such practice. P. 251.

59 Ct. Cls. 654, reversed.

APPEAL from a judgment of the Court of Claims rejecting a claim for money paid by Georgine Iselin, under protest, as a tax on receipts from sale of admissions to an opera box.

*Mr. H. G. Pickering,* with whom *Messrs. Eldon Bisbee* and *Henry Root Stern* were on the brief, for appellant.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* was on the brief, for the United States.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Metropolitan Opera House in New York City is owned by a corporation which leased it to the producing company. The use of all the parterre boxes was reserved by the lessor, with the privilege of six free admissions to each box at every performance. Before the passage of the Revenue Law of 1918, the lessor conferred upon Georgine Iselin, as owner of 300 of its shares, a license so to use a designated parterre box. During the season of 1919–20, being authorized so to do, she sold through a personal agent, the license to use her box for 47 of the 70 performances given during the season, and received therefor $9,525 net, after deduction of the agent's commissions. On the amount received Miss Iselin was assessed a tax of $3,352.50, under paragraph 3 of § 800(a) of the Revenue Act of 1918, Act of February 24, 1919, c. 18, 40 Stat. 1057, 1120–21. She paid the amount under protest and presented a claim that it be refunded. The Commissioner of Internal Revenue rejected the application, holding that the tax was payable under paragraph 4 of that Act.[1] Then, Miss Iselin brought this suit in the Court of Claims to recover the amount. A judgment

---

[1] Paragraph (4) provides: "A tax equivalent to 50 per centum of the amount for which the proprietors, managers, or employees of any opera house, theater, or other place of amusement sell or dispose of tickets or cards of admission in excess of the regular or established price or charge therefor, such tax to be returned and paid, in the manner provided in section 903, by the person selling such tickets."

dismissing the petition, rendered upon findings of fact, was entered March 5, 1924.   59 Ct. Cls. 654.   The case is here on appeal under § 242 of the Judicial Code.

Paragraph 3 of § 800(a), under which the tax was assessed, provides:

" Upon tickets or cards of admission to theaters, operas, and other places of amusement, sold at news stands, hotels, and places other than the ticket offices of such theaters, operas, or other places of amusement, at not to exceed 50 cents in excess of the sum of the established price therefor at such ticket offices plus the amount of any tax imposed by paragraph (1), a tax equivalent to 5 per centum of the amount of such excess; and if sold for more than 50 cents in excess of the sum of such established price plus the amount of any tax imposed under paragraph (1), a tax equivalent to 50 per centum of the whole amount of such excess, such taxes to be returned and paid, in the manner provided in § 903, by the person selling such ticket."

Neither stockholders' boxes nor tickets to them were on sale at any ticket office, as all the parterre boxes were reserved by the lease for the stockholders.   For this reason there was no regular or established price for parterre boxes.   Nor was any other box exactly like them on sale. Each sale of a stockholders' box or tickets was made as the individual transaction of a particular stockholder, for a particular performance, and to a designated purchaser. The price paid varied widely for different performances. There was, above the parterre boxes, a tier of boxes, known as the grand tier.   These boxes, which were on sale at the ticket office, also had seats for six persons, were uniform in size with the stockholders' boxes, and were otherwise similar.   The ticket office price for grand tier boxes was $60 for each performance.   The Commissioner of Internal Revenue, though sustaining the tax under paragraph 4, assessed the tax under paragraph 3, appar-

ently on the theory that Congress intended to tax sales of boxes like the plaintiff's; that, since there was no " regular established price or charge " for boxes exactly like hers and no such boxes were sold at the ticket office, the basis for taxation should be sought in the established price for the class of boxes actually on sale most like hers; that it should, therefore, be assumed that the box office price for the similar grand tier boxes was the " established price at the ticket offices " of parterre boxes; and that, with such price as a standard, the calculation involved in determining the item of " any tax imposed by paragraph (1)," and in assessing the supertax under paragraph (3) should be made.[2]

Miss Iselin contended that § 800(a) had no application to stockholders' boxes or tickets; that the section provided for a tax only on the tickets customarily sold at box offices, for which there is an established price there, and which are commonly sold at news stands, hotels and other places of business for higher prices; that it was the purpose of Congress to impose a small tax upon tickets sold at the ticket office, a moderate tax on those sold at a moderate advance over the ticket office price, and a large tax upon any resale of admission tickets if made at a price above a reasonable advance on the regular price, and also a large tax upon an original sale, if made at a price in excess of the regular or established price; that tickets issued under the peculiar circumstances stated, which were received by her as an incident of her investment in the lessor company and in return for obligations assumed by her as a stockholder to ensure performance of operas, were not within the purview of the section; that she was

[2] Paragraph (1) provides:

"A tax of 1 cent for each 10 cents or fraction thereof of the amount paid for admission to any place . . including admission by season ticket or subscription, to be paid by the person paying for such admission."

not taxable at all, since her tickets had not been sold at a box office and there was no established price for them; but that if taxable, it could be only under paragraph 5, under which she had without protest paid a tax on these tickets amounting to $242.[3]

The Court of Claims held that the tax was properly assessed under paragraph 3. It concluded that there was an "established price" for box tickets of this character, and that Miss Iselin herself had established the price, because, prior to the assessment to her of the tax here in question, she had paid without protest a tax assessed under paragraph 5, the amount of which the Government had determined by fixing $60 as the established price on which the tax so paid was calculated. The court held that the term "established price" did not imply a fixing of the price by the producing company or others having the general power of establishing the prices of tickets; that it was of no legal significance that plaintiff had in fact made no sale at the price fixed in the assessment, that she had actually sold the tickets for the different performances at widely varying prices, and that no sale had been made of such tickets at the ticket office.

The Government concedes that neither paragraph 1, paragraph 3, paragraph 4, paragraph 5, nor any other paragraph[4] of § 800(a), provides in terms for taxing a

---

[3] Paragraph (5) provides:

"In the case of persons having the permanent use of boxes or seats in an opera house or any place of amusement or a lease for the use of such box or seat in such opera house or place of amusement (in lieu of the tax imposed by paragraph (1)) a tax equivalent to 10 per centum of the amount for which a similar box or seat is sold for each performance or exhibition at which the box or seat is used or reserved by or for the lessee or holder, such tax to be paid by said lessee or holder; and . . ."

[4] The remaining paragraphs, so far as they impose a tax, are:

"(2) In case of persons (except . . ) admitted free or at reduced rates to any place at a time when and under circumstances under which an admission charge is made to other persons, a tax of

privilege like that enjoyed by the plaintiff. It makes no contention here that the tax can be sustained under any paragraph of § 800(a) unless it be paragraph 3. It argues that Congress clearly intended to tax all sales of tickets; that there is in the section no indication of intention to exempt from the tax any sale of tickets or any resale at a profit; that the receipts here taxed are in character substantially similar to those specifically described in paragraph 3; that this general purpose of Congress should be given effect, so as to reach any case within the aim of the legislation; and that the Act should, therefore, be extended by construction to cover this case. It may be assumed that Congress did not purpose to exempt from taxation this class of tickets. But the Act contains no provision referring to tickets of the character here involved; and there is no general provision in the Act under which classes of tickets not enumerated are subjected to a tax. Congress undertook to accomplish its purpose by dealing specifically, and in some respects differently, with different classes of tickets and with tickets of any one class under different situations. The particularization and detail with which the scope of each provision, the amount of the tax thereby imposed, and the incidence of the tax, were specified, preclude an extension of any provision by implication to any other subject. The statute was evidently drawn with care. Its language is plain and unam-

1 cent for each 10 cents or fraction thereof of the price so charged to such other persons for the same or similar accommodations to be paid by the person so admitted;

"(6) A tax of 1½ cents for each 10 cents or fraction thereof of the amount paid for admission to any public performance for profit at any roof garden, cabaret, or other similar entertainment, to which the charge for admission is wholly or in part included in the price paid for refreshment, service, or merchandise; the amount paid for such admission to be deemed to be 20 per centum of the amount paid for refreshment, service, and merchandise; such tax to be paid by the person paying for such refreshment, service, or merchandise."

biguous. What the Government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function. Compare *United States* v. *Weitzel,* 246 U. S. 533, 543; *Peoria & Pekin Union Ry. Co.* v. *United States,* 263 U. S. 528, 534, 535.

The Government calls attention to the fact that, as early as October 24, 1919, the Commissioner of Internal Revenue made the ruling pursuant to which the tax here in question was assessed; that on March 22, 1920, the Attorney General sustained that ruling; that the provisions here in question were re-enacted without substantial change in the Revenue Act of 1921, Act of November 23, 1921, § 800(a), c. 136, 42 Stat. 227, and the Revenue Act of 1924, Act of June 2, 1924, § 500(a), c. 234, 43 Stat. 253; and that the administrative practice adopted in 1919 has been steadfastly pursued. It suggests that these facts imply legislative recognition and approval of the executive construction of the statute. But the construction was neither uniform, general, nor long-continued; neither is the statute ambiguous. Such departmental construction cannot be given the force and effect of law. Compare *United States* v. *Falk & Brother,* 204 U. S. 143; *National Lead Co.* v. *United States,* 252 U. S. 140, 146.

*Reversed.*