**Reynaldo RODRIGUEZ, Plaintiff,**

v.

**CITY OF AURORA, an Illinois Municipal Corporation, and the Board of Trustees of the City of Aurora Police Pension Fund, Defendants.**

No. 94 C 5578.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 17, 1995.

Bruce Allen Brown, Goldsmith, Thelin, Dickson & Brown, Margaret Anne Gisch, Aurora, IL, for Reynaldo Rodriguez.

Michael B. Weinstein, Alayne M. Weingartz, City of Aurora, Dept. of Law, Aurora, IL, for City of Aurora.

Charles H. Atwell, Jr., Atwell & Atwell, Aurora, IL, for Bd. of Trustees of City of Aurora Police Pension Fund.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Reynaldo Rodriguez brings this three count action, alleging violations of the Americans with Disabilities Act and the Rehabilitation Act. Presently before the court is defendant Board of Trustees of the City of Aurora Police Pension Fund's motion to dismiss Count I of the complaint. For the reasons set forth below, defendant's motion is granted.

### I. Background

Plaintiff Reynaldo Rodriguez is a City of Aurora ("the City") police officer. Soon after becoming a patrolman, Rodriguez applied for admission into the City's Police Pension Fund ("the Fund"), which is managed by defendant Board of Trustees of the City of Aurora Pension Fund ("the Board"). After taking physical and mental examinations, Rodriguez was notified that he was to appear at a hearing regarding his application for admission. Rodriguez failed to attend the hearing, and the Board subsequently denied his application, based on a purported disc narrowing on his lumbar spine and a purported problem with abstract thinking.[1] Rodriguez' request for rehearing was denied, and his state complaint for judicial review was denied on procedural grounds. In September, 1994, Rodriguez filed the present complaint.

### II. Discussion

Rodriguez' claim against the Board is based on subchapter II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Subchapter II provides, in relevant part:

---

1. The City, however, has admitted that it found Rodriguez fit for service as a police officer.

[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The Board has moved to dismiss, asserting, among other things, that it is not a "public entity" within the meaning of 42 U.S.C. § 12131(1), and that Rodriguez is not a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131(2). We need not resolve these issues, because even if the Board is incorrect in both of these arguments, it is clear that the ADA exempts the Board from the prohibitions of the Act in this case. Section 501(c) of the Act, codified at 42 U.S.C. § 12201(c), states:

(c) Insurance

Subchapters I through III of this chapter and title IV of this Act shall not be construed to prohibit or restrict—

(1) an insurer, hospital or medical service company, health maintenance organization, or any agent, or entity that administers benefit plans, or similar organizations from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law; or

(2) a person or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on, or not inconsistent with State law; or

(3) a person or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that is not subject to State laws that regulate insurance.

Paragraphs (1), (2), and (3) shall not be used as a subterfuge to evade the purposes of subchapters I and III of this chapter. 42 U.S.C. § 12201(c).[2] As both parties acknowledge, this section provides an exemp-

---

2. Subchapter I of the ADA relates to discrimination in employment, while Subchapter III relates to discrimination in public accommodations and

tion to entities which, like the Board, administer plans which provide insurance benefits. Indeed, Rodriguez implicitly admits that the Board generally qualifies for the exemption under one of the numbered paragraphs in this section. Rodriguez' only argument in support of his claim that § 501(c) does not bar his action against the Board is that the Board's actions in denying his application constitute a subterfuge. As is clear from the language of the statute, however, the "subterfuge" exception to the insurance exemption only applies to actions brought under subchapters I and III; it does not apply to actions, like Rodriguez', brought under subchapter II.

■ In response, Rodriguez asserts that we should ignore the plain language of the statute because "the legislative history of the ADA would indicate that Congress meant to prohibit the use of Section 501(c) as a subterfuge to evade not only [subchapters] I and III, but also [subchapter] II of the ADA." *Pl.'s Mem.Opp.* at 14 (citing H.R.Rep. No. 485(II), 101st Cong., 2d Sess. 136, *reprinted in* 1990 U.S.C.C.A.N. 303, 419). Such a practice, however, has been explicitly rejected by the Supreme Court:

> Where [the statutory text] contains a phrase that is unambiguous ... we do not permit it to be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process.

*West Virginia Univ. Hosp., Inc. v. Casey,* 499 U.S. 83, 98–99, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991). *See also Iselin v. United States,* 270 U.S. 245, 250–51, 46 S.Ct. 248, 250, 70 L.Ed. 566 (1926) ("[The statute's] language is plain and unambiguous. What the Government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included

within its scope. To supply omissions transcends the judicial function.").[3] Because the "subterfuge" exception to the general exemption of 501(c) does not, by its own terms, apply to actions brought under subchapter II of the ADA, it provides no assistance to Rodriguez. Accordingly, the Board is entitled to dismissal from this action.

### III. Conclusion

For the reasons set forth above, we grant defendant Board of Trustees of the City of Aurora Police Pension Fund's Motion to dismiss Count I. It is so ordered.

---

services operated by private entities. Title IV of the Act amended various sections of the Communications Act of 1934, located in Title 47, Telegraphs, Telephones, and Radiotelegraphs. Subchapter II of the ADA, pursuant to which this action is brought, relates to discrimination in public services.

**3.** In any event, we note that contradictory legislative history exists. For example, when the final

House and Senate bills went to conference committee, both bills limited the "subterfuge" exception to subchapters I and III; the sole dispute was over the proper introduction to the exception. *See* H.R.Conf.Rep. No. 558, 101st Cong., 2d Sess. (1990), *reprinted in* 1990 WL 259240 at 178 (June 26, 1990). Accordingly, even the legislative history provides, at best, only marginal support for Rodriguez' position.