# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-1385
Lower Tribunal No. 2014-CA-012727-O

_____

MARK KINCHLA, individually, and MARK 48, LLC,

Appellants,

v.

RAN INVESTMENTS, LLC, KILGORE PROPERTIES, LLC, NANLANN, INC., ROBERT POLA, NEWTON CORNER CONDOMINIUM ASSOCIATION, INC., SAIBABA OF ORLANDO, INC., JENNIFER BAKER POLA, JENEMI ASSOCIATES, INC., and SANDHILL HOMES, INC.,

Appellees.

_____

Appeal from the Circuit Court for Orange County.
John E. Jordan, Judge.

September 6, 2024

WHITE, J.

Mark Kinchla ("Kinchla") and Mark 48, LLC ("Mark 48") appeal a final judgment in favor of Nanlann, Inc. ("Nanlann"), on its own behalf and derivatively on behalf of Kilgore Properties, LLC ("Kilgore").[1] We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A). Because the trial court erred in calculating damages for

---

[1] This case was transferred from the Fifth District Court of Appeal to this Court on January 1, 2023.

Nanlann's derivative breach of fiduciary duty claim and erred by rejecting the statute of limitations defense to Nanlann's derivative indemnification claim, we affirm in part and reverse in part.

## Background

In 2007, Kilgore purchased real property that it intended to develop and sell (the "Project"). On the closing date, Kilgore's members, Mark 48[2] and Nanlann, signed an operating agreement (the "Operating Agreement"). That agreement gave Kilgore a right to indemnification against Mark 48 for any breach of the Operating Agreement. Under that agreement, Mark 48 was required to make a $350,000.00 capital contribution in cash on the closing date. Mark 48 failed to make that contribution as required, but still received a 35% ownership interest in Kilgore. Nanlann received the remaining 65% ownership interest.

Kilgore obtained a mortgage loan from Orange Bank to fund development of the Project. After a portion of the Project had been developed and sold, Kilgore began its efforts to sell the undeveloped portion that remained (the "Property"). Kilgore agreed to sell the Property to Saibaba of Orlando, Inc. ("Saibaba") for $1.6 million. Mark 48 objected and the sale to Saibaba never closed. Because Kilgore was unable to pay its mortgage, Floridian Bank (which had acquired Orange Bank) declared a default under the loan documents.

---

[2] Kinchla is Mark 48's sole member.

In 2014, Nanlann filed an action to dissolve Kilgore and force the sale of the Property. Soon thereafter, Floridian Bank commenced a foreclosure action against the Property. During the litigation, the Property was sold to LG 2121 S. Orange, LLC ("LG") for $1.75 million and all amounts owed by Kilgore to Floridian Bank were paid from the proceeds. The parties in this appeal, however, continued to pursue their claims against each other. Almost six years later, the trial court conducted a non-jury trial on the parties' remaining claims, then entered final judgment.

The trial court found that Mark 48 breached its fiduciary duty to Kilgore by objecting to the sale of the Property to Saibaba. It determined that Mark 48's objection caused the amounts owed under Floridian Bank's loan documents to increase from the date of the proposed sale to Saibaba until the date of the actual sale to LG. As a result, Kilgore paid $173,927.81 more to Floridian Bank, and the trial court awarded damages in that amount. In calculating damages, however, the trial court did not consider that LG paid $150,000.00 more to Kilgore than Saibaba would have paid.

The trial court also found that Mark 48 breached the Operating Agreement by failing to make its required capital contribution in cash when the Project was purchased in 2007. It decided that Kilgore was entitled to indemnification under the Operating Agreement for the $350,000.00 loss caused by the breach. The trial court

3

rejected Mark 48's argument that the indemnification claim was barred by the five-year statute of limitations. Although it agreed that section 95.11(2)(b) applied, it concluded that Mark 48's knowledge of the breach was not imputed to Kilgore, citing to *Nerbonne, N.V. v. Lake Bryan International Properties*, 685 So. 2d 1029, 1030 (Fla. 5th DCA 1997). Applying *Nerbonne*, the trial court determined that the statute of limitations did not begin to run until 2013 when Nanlann (the agent not acting adversely to Kilgore) discovered that Mark 48 breached the Operating Agreement. Because the indemnification claim was asserted within five years of that discovery, the trial court found that it was not time-barred.

The trial court decided that Nanlann was entitled to recover derivatively on behalf of Kilgore. It also concluded that it was appropriate to pierce the corporate veil and hold Kinchla individually liable. Therefore, the trial court entered final judgment against Kinchla and Mark 48 in the total amount of $523,927.81 for Nanlann's derivative claims. After the trial court denied their motion to amend the judgment and alternative motion for new trial, Kinchla and Mark 48 timely appealed.

**Analysis**

Appellants argue that the trial court incorrectly calculated damages for the breach of fiduciary duty claim because it disregarded the increase in the sales price. We agree.

4

The trial court's method of calculating or measuring damages is reviewed de novo. *See Bass Venture Corp. v. Devom, LLC*, 342 So. 3d 821, 824 (Fla 2d DCA 2022); *24 Hr Air Serv. v. Hosanna Cmty. Baptist Church, Inc.*, 322 So. 3d 709, 712 (Fla. 3d DCA 2021); *DFG Grp., LLC v. Heritage Manor of Mem'l Park, Inc.*, 237 So. 3d 419, 421 (Fla. 4th DCA 2018).

"The goal of damages in tort actions is to 'restore the injured party to the position it would have been in had the wrong not been committed.'" *DFG Grp., LLC*, 237 So. 3d at 421-22 (quoting *Totale, Inc. v. Smith*, 877 So. 2d 813, 815 (Fla. 4th DCA 2004) (citation omitted)). Here, had Mark 48 not objected to the sale to Saibaba, Kilgore would have paid $173,927.81 less to Floridian Bank, but Kilgore would have received $150,000.00 less than it did from the sale to LG. Therefore, an award of $23,927.81 puts Kilgore in the position as if Mark 48 had not breached its fiduciary duty. Because it failed to account for the $150,000.00 increase in sale proceeds, the trial court miscalculated damages for the fiduciary duty claim, and that award must be reduced to $23,927.81.

Appellants also contend that the trial court erroneously relied on *Nerbonne* to find that the indemnification claim was not barred by the statute of limitations. Appellants are right.

We review de novo the trial court's rulings on legal issues regarding the statute of limitations. *See Maki v. NCP Bayou 2, LLC*, 368 So. 3d 1081, 1084 (Fla.

5

6th DCA 2023); *Foley v. Azam*, 257 So. 3d 1134, 1137 (Fla. 5th DCA 2018); *Curry v. State*, 227 So. 3d 628, 631 (Fla. 4th DCA 2017).

"In interpreting [a] statute, we follow the 'supremacy-of-text principle'—namely, the principle that '[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.'" *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). "Consistent with this rule, we do not add words to a statute in the guise of interpreting it." *Coates v. R.J. Reynolds Tobacco Co.*, 365 So. 3d 353, 354 (Fla. 2023). Those precepts shall be our polestars as we examine the text of the relevant statutes.

An action for breach of a written contract must be commenced within five years. *See* § 95.11(2)(b), Fla. Stat. (2007). "Except as provided in subsection (2) and in s. 95.051 and elsewhere in these statutes, the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues." § 95.031, Fla. Stat. (2007). "A cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1). However, for "[a]n action founded upon fraud under s. 95.11(3), including constructive fraud" or "[a]n action for products liability under s. 95.11(3)," the limitations period runs from the date that the factual basis for the claim was discovered or should have been

6

discovered. § 95.031(2)(a), (b). The Legislature also specified the circumstances that toll a statute of limitations. *See* § 95.051, Fla. Stat. (2007).[3]

Nanlann agrees that section 95.11(2)(b) applies to Kilgore's indemnification claim for Mark 48's breach of the Operating Agreement. Furthermore, Nanlann does not contend that section 95.031(2), section 95.051, or any other statute altered when the cause of action accrued, delayed the start of the limitations period, or tolled the running of the limitations period. As a result, the five-year limitations period began to "run[] from the time . . . when the last element constituting the cause of action occur[red]." § 95.031, .031(1).

A cause of action for breach of contract consists of three elements: a valid contract; a material breach; and damages. *See, e.g.*, *Presidio, Inc. v. Feeney*, 384 So. 3d 209, 211 (Fla. 4th DCA 2024). Here, the trial court found that all three of those elements occurred in 2007, and that Nanlann commenced its derivative indemnification claim for breach of contract in 2016. Nanlann does not challenge either finding. Therefore, the indemnification claim was time-barred because it was filed after the limitations period expired in 2012.

---

[3] Appellants argue that the statute of limitations began to run in 2007. Nanlann argues, and the trial court found, that the statute of limitations began to run in 2013. There are no material differences between the 2007 and 2013 versions of the relevant statutory provisions.

We reject Nanlann's argument that *Nerbonne* justifies the trial court's conclusion that the indemnification claim was not barred by the statute of limitations. That case involved claims for breach of fiduciary duty, intentional torts, and negligence subject to the four-year limitations period in section 95.11(3), Florida Statutes (1995). *See Nerbonne*, 685 So. 2d at 1031. The court characterized those claims as being based on fraud. *See id.* at 1030-32. Section 95.031(2), Florida Statutes (1995) made a discovery rule[4] applicable to actions for fraud under section 95.11(3). Therefore, the date that knowledge of the fraud was imputed to Nerbonne was material because that would be the date it discovered the fraud and the limitations period commenced. *See Nerbonne*, 685 So. 2d at 1031-32.

In this case, however, the date that knowledge was imputed to Kilgore by Nanlann's discovery of the breach is immaterial because the claim is governed by sections 95.11(2)(b), 95.031 and 95.031(1), which do not include a discovery rule. Because *Nerbonne* did not address such a claim, it is simply inapplicable here. To the extent that Nanlann invites us to extend *Nerbonne* to salvage the indemnification claim, we decline that invitation.

---

[4] This opinion and the supreme court cases cited below use "discovery rule," "delayed discovery rule," "delayed discovery doctrine," and "delayed accrual rule" to refer to the same concept: the limitations period does not start to run until the basis for the claim is discovered or should have been discovered.

More than a quarter century ago, the Florida Supreme Court quashed a decision that applied a discovery rule in an action on a performance bond for latent defects governed by section 95.11(2)(b), Florida Statutes (1981). *See Fed. Ins. Co. v. Sw. Fla. Ret. Ctr., Inc.*, 707 So. 2d 1119, 1120-21 (Fla. 1998). In doing so, the court declared:

> [S]ection 95.11(2)(b), Florida Statutes (1981), makes no reference to a discovery rule for latent defects. Using the principle of statutory construction *expressio unius est exclusio alterius*, we conclude that the absence of such express language in section 95.11(2)(b), Florida Statutes (1981), is clear evidence that the legislature did not intend to provide a discovery rule in section 95.11(2)(b), Florida Statutes (1981). To conclude otherwise would require us to write into section 95.11(2)(b), Florida Statutes (1981), a discovery rule when the legislature has not.

*Fed. Ins. Co.*, 707 So. 2d at 1122.

The supreme court again refused to go outside the statutory framework and apply the delayed discovery doctrine in *Davis v. Monahan*, 832 So. 2d 708 (Fla. 2002). There, it rejected a decision that extended the delayed discovery rule to breach of fiduciary duty, civil theft, conspiracy, conversion, and unjust enrichment claims based on the wrongful taking of property from an elderly woman suffering from senile dementia. *See id.* at 708-12. Instead, the court approved decisions that held the delayed discovery doctrine does not apply to tortious interference with a business relationship, unfair and deceptive trade practice, and breach of fiduciary

9

duty claims. *See id.* at 711. "To hold otherwise would result in this Court rewriting the statute, and, in fact, obliterating the statute." *Id.*

Subsequently, Florida's highest court denied a request to extend the delayed discovery rule to negligence and respondeat superior claims based on child sexual abuse. *See R.R. v. New Life Cmty. Church of CMA, Inc.*, 303 So. 3d 916, 918-25 (Fla. 2020). It found that *Davis* foreclosed the creation of a delayed accrual rule by judicial fiat. *See id.* at 923. The court expounded:

> The reasoning underlying our decision in *Davis* is dictated by basic principles of statutory interpretation and, more broadly, of separation of powers. To give proper effect to statutes of limitations, courts must also faithfully apply the accrual and tolling rules prescribed by the Legislature. "[A]ny period of limitation is utterly meaningless without specification of the event that starts it running." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 199, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (Scalia, J., concurring in part and concurring in the judgment). Here, the Legislature adopted an unambiguous statutory default rule for accrual that applies in all cases "except as provided" in statute. § 95.031, Fla. Stat.
>
> The statutory framework leaves no room for supplemental common law accrual rules. When a "statute purports to provide a comprehensive treatment of the issue it addresses, judicial lawmaking is implicitly excluded." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 96 (2012). Put differently, given the comprehensive statutory framework governing accrual, "[t]o supply omissions transcends the judicial function." *Iselin v. United States*, 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566 (1926); *see also S. Ct. Adept*, 271 So. 3d at 886 (Canady, J., dissenting) ("The accrual doctrine should not be manipulated when the Legislature has clearly pronounced what the exceptions are and are not.").

*R.R.*, 303 So. 3d at 923.

If we approved the trial court's use of an extra-statutory discovery rule here, we would contravene the applicable statutes and the supreme court's guiding precepts discussed above. That we cannot do. We must maintain our fidelity to those legislative enactments and bedrock judicial principles. Therefore, we conclude that the trial court erred when it determined that the indemnification claim was not barred by the statute of limitations.

## Conclusion

For all the foregoing reasons, we reverse the trial court's calculation of damages for Nanlann's derivative breach of fiduciary duty claim[5] and entry of judgment on Nanlann's derivative indemnification claim. Otherwise, we affirm without further discussion. We remand for entry of a final judgment in the total amount of $23,927.81 for Nanlann's derivative breach of fiduciary duty claim.

AFFIRMED in part; REVERSED in part; REMANDED with instructions.

BROWNLEE and GANNAM, JJ., concur.

Christopher C. Cathcart and Heidi Hebden, of Cathcart Law Group P.A., Altamonte Springs, for Appellants.

---

[5] Appellants also challenge the trial court's *finding* that Nanlann (derivatively) "should recover" $300,000.00 for a breach of fiduciary duty relating to the sale of the Property to LG. However, the trial court's *judgment* was that Nanlann (derivatively) "shall recover" a sum which excluded that $300,000.00. Therefore, we reject Appellants' challenge. *See Edmondson v. Swope*, 395 So. 2d 553, 554 (Fla. 5th DCA 1980) ("[Appellant] cannot complain of this error because he is not adversely affected, and [Appellee] has not cross appealed that issue.").

11

Robert Clayton Roesch and J. Stephen McDonald, of Shuffield, Lowman & Wilson, P.A., Orlando, for Appellee, Nanlann, Inc.

No Appearance for Appellees, Ran Investments, LLC, Kilgore Properties, LLC, Robert Pola, Newton Corner Condominium Association, Inc., Saibaba of Orlando, Inc., Jennifer Baker Pola, Jenemi Associates, Inc., and Sandhill Homes, Inc.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED