DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GRAND HARBOR COMMUNITY ASSOCIATION, INC.,**
Appellant,

v.

**GH VERO BEACH DEVELOPMENT, LLC,**
a Delaware limited liability company,
**CHRISTOPHER J. CLEARY, JOSEPH COLASUONNO,
CHRIS CARD, MICHAEL GOSTOMSKI,** and **DANICA BAHADUR,**
Appellees.

No. 4D2023-1191

[October 2, 2024]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Janet Carney Croom, Judge; L.T. Case No. 312021CA000281.

Edward P. de la Parte, David M. Caldevilla, and Nicolas Q. Porter of de la Parte, Gilbert, McNamara & Caldevilla, P.A., Tampa, and Lewis W. Murphy, Jr., Casey Walker, and Elisa C. Mills of Murphy & Walker, P.L., Vero Beach, for appellant.

Jason R. Domark of Cozen O'Connor, Miami, Matthew B. Criscuolo of Cozen O'Connor, West Palm Beach, and Herbert Beigel of Law Offices of Herbert Beigel, Tucson, AZ, for appellees.

WARNER, J.

Appellant, Grand Harbor Community Association, Inc., a homeowner's association (the "Association"), appeals a final summary judgment entered in favor of appellees, GH Vero Beach Development, LLC (the "Developer"), and several individual Association Board members appointed by the Developer. The Association sued the Developer for breach of contract, alleging that the Developer breached the Declaration of Covenants because the Developer-controlled Board failed to fund reserves for capital improvements and because the Developer failed to pay its proper share of the community's operating expenses. The Association also sued both the Developer and several individual Board members for breach of fiduciary duty, alleging that the Board members breached their duty by failing to

properly fund the reserves and alleging that the Developer was vicariously liable for their breach. The trial court granted summary judgment for the Developer and individuals on all claims on multiple bases.

We reverse the part of the summary judgment pertaining to the Association's breach of contract claim for the Developer's failure to pay its proper share of the community's operating expenses, but we conclude that any recovery on that claim is limited by the statute of limitations. We affirm the final summary judgment as to the breach of fiduciary duty claim and for the breach of contract claim for the failure to fund reserves.

## Facts

Grand Harbor is a private residential community in Vero Beach. The Association is a not-for-profit corporation that was created pursuant to Grand Harbor's Declaration of Covenants to own and maintain the common areas and amenities in Grand Harbor. The Association was established in 1988 by Grand Harbor, Inc., the original developer of the Grand Harbor community, and the Association is run by a board of directors. The Declaration provides that the Board members "shall not be liable for any mistake of judgment, negligent or otherwise, except for their own individual willful misfeasance, malfeasance, misconduct, or bad faith."

The Declaration creates two membership classes in Grand Harbor, Class A and Class B. Class A is comprised by the individual unit owners, whose voting shares are proportionate to their units owned. Class B's sole member is Grand Harbor, Inc., and its successors or assignees. The Class B member retained the right to appoint a majority of Board members (three out of five) during the "Class B Control Period." The Class B member also retained a veto power over the Board's actions so long as Class B membership existed, with Class B membership set to terminate two years after the end of the Class B Control Period, or earlier at the Class B member's discretion. In July 2004, the Developer succeeded Grand Harbor, Inc. as the Class B Member.

The Declaration requires that the Association maintain the community's common areas, and requires that the unit owners pay for the maintenance with base assessments. As the Class B member, the Developer was responsible for the base assessments of all unsold units, but in lieu of those assessments, the Developer was obligated to pay the difference between the assessments collected from occupied units and the amount required to fund the Association's operating expenses. This obligation lasted as long as the Developer was allowed to unilaterally add

to the community's property, which ended no later than December 1, 2020.

The Declaration required the Board to prepare a budget every year covering the estimated common expenses. The Declaration provides that "[t]he budget shall include a capital contribution establishing a reserve fund in accordance with the capital budget separately prepared." Regarding the Capital Budget, the Declaration provides:

> The Board shall set the required capital contribution, if any, in an amount sufficient to permit meeting the projected capital needs of the Association, as shown on the capital budget, with respect both to amount and timing by annual assessments over the period of the budget. The capital contribution required, if any, shall be fixed by the Board and include within and distributed with the budget and assessment, as provided in . . . this Article.

Appellees Christopher Cleary, Joseph Colasuonno, Chris Card, Michael Gostomski, and Danica Bahadur (the "Developer-Directors," collectively) were each members of the Board appointed by the Developer during the Class B Control Period. The Class B Control Period ended on December 1, 2020, when the Developer transferred control to the unit owners (the Class A members).

In April 2021, a few months after the Developer transferred control of the Association to the members, the Association filed a complaint against the Developer for breach of contract, and against all appellees for breach of fiduciary duty.

After appellees answered the complaint and some discovery occurred, appellees moved for partial summary judgment on three issues, requesting:

> (a) dismissal of the individual defendants for breach of fiduciary duty and [Developer] for respondeat superior, (b) dismissal of [Developer] for breach of the 2004 Declaration concerning the alleged failure of the Board to establish annual capital reserves for repair and replacement, and (c) to limit any surviving claims to the applicable period of the statute of limitations.

Regarding the breach of contract claim, the Developer argued that the Board, rather than the Developer, was required to create budgets and levy

3

assessments to fund the reserves. The Developer argued it had no duty to maintain the reserves, and no evidence showed the Developer failed to pay its individual assessments (or the Association's deficit in lieu of assessments). Thus, the Developer argued no evidence existed that it had breached the Declaration, entitling it to summary judgment on the breach of contract claim.

Regarding the breach of fiduciary duty claim, appellees argued no evidence showed that any of the Developer-Directors had operated with willful malfeasance or in bad faith, as opposed to mere negligence, in failing to maintain the reserve funds or properly calculate the Developer's obligations, and therefore no evidence showed that they breached any fiduciary duty. Appellees also argued that the Developer could not be liable for breach of fiduciary duty because its liability was premised on that of the Developer-Directors.

Lastly, appellees argued that both the breach of contract and the breach of fiduciary duty claims were barred in part by the statute of limitations. The limitations period for breach of contract is five years and the period for breach of fiduciary duty is four years. The Association filed its complaint in April 2021 and sought damages dating back to 2004.

In response, the Association argued that a question of material fact remained as to whether the Developer had breached the Declaration, because the facts showed the Developer controlled the Board that had violated the Declaration. The Association also argued that material fact questions remained on the breach of fiduciary duty claim as to whether the officers had acted with fraudulent intent or bad faith, and thus also a material question as to the Developer's vicarious liability. In addition, the Association contended that the appellees bore the burden of proof on their affirmative defense that the Developer-Directors had not acted in bad faith or with willful misconduct, and appellees had not met their burden. The Association relied on the Declaration, as well as interrogatories and affidavits to support its opposition to the summary judgment motion.

Regarding the statute of limitations, the Association argued that it could not have discovered the breach of contract or breach of fiduciary duty prior to turnover, and that the action was timely as to that date. The Association also argued that because the Developer had retained veto power during the Class B Control Period, filing suit earlier than the turnover date would have been futile because the Developer could have vetoed filing suit. Finally, the Association requested that the summary judgment hearing be continued so that the Association could depose the Developer-Directors and a few other witnesses. However, the Association

4

did not submit an affidavit to explain why the witnesses could not have been deposed earlier.

The Developer filed a reply two days before the summary judgment hearing. The Developer made a new argument that the Association could not assert standing under Florida Rule of Civil Procedure 1.221, because each unit owner stood in a different position depending on how long he or she owned the unit. The Developer also contended that proof of damages was lacking. As to the breach of fiduciary duty claim, the Developer argued that the business judgment rule, on which the directors' conduct is measured, is not an affirmative defense but one on which the Association must offer proof.

As to the statute of limitations, the Developer argued that the failure to provide for reserves was discoverable before turnover, because the Declaration required the Board to prepare an annual budget made available to the individual members, so the members would have seen the lack of reserves each year. The Developer also argued that even if it had controlled the Board, this control would not have prevented the Association from filing a derivative action. Finally, as to the Association's request to continue the hearing, the Developer argued that the Association did not show a need for additional discovery, because the Association failed to explain how additional evidence would preclude summary judgment, or why the Association could not have taken outstanding depositions within the two years since initiating the action.

The trial court held a hearing on the summary judgment motion. While the arguments mirrored the written motion, response, and reply, the Association objected to the Developer raising new arguments in the reply, including damages, standing, and the claim that any breach in failing to set reserves constituted a yearly breach rather than one breach at turnover.

The trial court granted summary judgment for the Developer and the individual board members. The trial court found that the Association lacked standing under Florida Rule of Civil Procedure 1.221. In addition, the trial court found the Association's claims were barred by the statute of limitations, as the delayed discovery of breach of contract or breach of fiduciary duty does not toll those claims' respective limitations periods. The trial court determined to the extent that the Developer's failure to fund reserves was a breach, that breach occurred when the Developer failed to fund the reserves and not at turnover.

5

On the merits, the trial court found that the Association's claim for breach of contract failed, because it was the Board rather than the Developer which had set the budget, and the Developer never failed to pay an amount demanded by the Board. The trial court also found that the Association did not provide any evidence that the Developer-Directors had acted in bad faith or with willful malfeasance in failing to fund the reserves. The trial court also denied the Association additional time to conduct discovery.

The Association moved for rehearing, attaching additional evidence to support denial of summary judgment in the form of depositions taken after the summary judgment hearing. The trial court denied the motion. This appeal follows.

## Analysis

The standard of review for summary judgment is de novo. *De Cruz-Haymer v. Festival Food Mkt., Inc.*, 117 So. 3d 885, 888 (Fla. 4th DCA 2013).

Under Florida's summary judgment standard, which mirrors the federal standard, "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." Fla. R. Civ. P. 1.510(a). The procedure requires the party moving for summary judgment to establish that a fact is undisputed or cannot be established through citation to materials in the record. Fla. R. Civ. P. 1.510(c). However, where the non-moving party has the burden of proving a fact, the moving party does not have to file affidavits or provide support to show that there is no evidence to support the non-moving party's claim:

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

6

In addition, considering evidence or arguments first raised in a reply without giving the opposing party an opportunity to respond constitutes an abuse of discretion. *See Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*, 793 Fed. App'x 896, 901–02 (11th Cir. 2019) (citing *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998)) ("When faced with a reply brief that offers new evidence, we, like the Tenth Circuit, conclude that the district court has two permissible courses of action. It can either (1) permit the nonmoving party to file a surreply or (2) refrain from relying on any new material contained in the reply brief.").

With this background, we address the various issues presented.

## Standing

The Developer did not raise the issue of the Association's standing until it filed its reply just days prior to the hearing. Based upon the argument's tardiness, the trial court erred in considering standing when granting summary judgment. Additionally, on the merits, the court erred in concluding that the Association lacked standing. Florida Rule of Civil Procedure 1.221 provides:

> A homeowners' or condominium association, after control of such association is obtained by homeowners or unit owners other than the developer, may institute, maintain, settle, or appeal actions or hearings in its name on behalf of all association members concerning matters of common interest to the members, including, but not limited to: (1) the common property, area, or elements . . . .

Homeowner's association members have a common interest in whether they must share in funding reserves, and how much they much contribute. *See Homeowner's Ass'n of Overlook, Inc. v. Seabrooke Homeowner's Ass'n, Inc.*, 62 So. 3d 667, 671 (Fla. 2d DCA 2011) ("The members of Overlook have a common interest in whether they must share in the expense of maintaining the roads in the Promenade and Vistas subdivisions of the Seabrooke development. . . . Therefore, the trial court erred in dismissing Overlook's complaint for lack of standing."). Thus, the trial court erred in considering the Developer's standing argument in its reply, as well as in determining that the Association lacked standing to pursue this action under Florida Rule of Civil Procedure 1.221.

7

**Breach of Contract**

The trial court found that the Developer was entitled to judgment as a matter of law on the Association's breach of contract claim, because the Declaration imposed the obligation to fund reserves on the Board through the budgeting process, rather than the Developer. Without evidence showing the Developer had controlled the Board during the Class B Control Period, the Association could not prove a breach of contract for failing to fund reserves. The Developer did not move for summary judgment on the complaint's allegations that the Board had undercounted the Developer-owned units,[1] thus undercharging the Developer's deficit funding obligation. The trial court did not address this portion of the breach of contract claim in the final summary judgment.

We conclude the trial court did not err in granting summary judgment on the portion of the breach of contract claim based upon the failure to create and fund reserves. The Board was required to budget for reserves and its failure to approve a budget that included reserves did not breach any obligation that the Developer had under the Declaration. Even if the Developer had controlled the Board, that does not equate to a cause of action against the Developer for breach of the Declaration.

On the other hand, we reach a different conclusion as to whether the undercounting of Developer units and reduction of Developer contributions can be a breach of the Declaration by the Developer. Not only did the Developer not seek summary judgment on this portion of the breach of contract claim, but the Declaration specifically provides:

> So long as the [Developer] has an option unilaterally to subject additional property to this Declaration, in lieu of paying Base Assessments on its unsold Units[,] the [Developer] shall be obligated for the difference between the amount of assessments levied on all Units subject to assessment and the amount of actual expenditures required to operate the Association during the fiscal year.

Thus, the obligation to fund the Association's operating deficit is imposed directly on the Developer itself. Failing to pay the proper amount could amount to a breach of the Declaration by the Developer. Therefore,

---

[1] The motion requested partial summary judgment "dismissal of [Developer] for breach of the 2004 Declaration concerning the alleged failure of the Board to establish annual capital reserves for repair and replacement."

not only was this issue not raised in the summary judgment, but it is not disposed of on this record.

## Breach of Fiduciary Duty

The Declaration provides that the Board members "shall not be liable for any mistake of judgment, negligent or otherwise, except for their own individual willful misfeasance, malfeasance, misconduct, or bad faith." The trial court found that the Developer and the Developer-Directors were entitled to summary judgment on the breach of fiduciary duty claim, because no evidence existed that the Developer-Directors had acted in bad faith in failing to fund the reserves or in undercharging the Developer for its deficit reimbursement obligation, and therefore no basis existed to hold the Developer vicariously liable.

Under Florida law, the "business judgment rule" protects directors of non-profit corporations, such as the Association, from personal liability for any actions undertaken as directors "absent a showing of bad faith, self-dealing, or a violation of criminal law." *New Horizons Condo. Master Ass'n v. Harding*, 336 So. 3d 796, 799 (Fla. 3d DCA 2022). "[A]lleged failure to conduct maintenance and repairs, . . . are not indicative of fraud, self-dealing or unjust enrichment." *Sonny Boy, L.L.C. v. Asnani*, 879 So. 2d 25, 29 (Fla. 5th DCA 2004).

The Developer argued in its motion for partial summary judgment that the Association had no evidence of bad faith, willful misfeasance, or misconduct. As the Association had the burden to prove the Developer-Directors' bad faith, willful misfeasance or misconduct at trial, the Association had to produce evidence of such conduct to preclude summary judgment. As evidence, the Association produced a letter written shortly before turnover in which one of the Developer-Directors had stated that he did not reject the idea of reserves, but he noted that *during the transfer process*, the Developer-Directors would be considering issues from the standpoint of the Developer. The court properly found that this did not show bad faith or misfeasance by the Developer-Directors in failing to include reserves in the yearly budgets. The Developer-Directors' affiliation with the Developer, without more, is not sufficient evidence of bad faith. *See Taylor v. Wellington Station Condo. Ass'n*, 633 So. 2d 43, 45 (Fla. 5th DCA 1994) (holding that director's status as twenty-five percent shareholder in developer was insufficient to show bad faith). Nor did the Association show that the miscalculations, if any, of the Developer's deficit funding obligation were intentional, rather than negligent. Thus, the trial court did not err in granting summary judgment on the Association's breach of fiduciary duty claim.

## Statute of Limitations

In its motion for summary judgment, the Developer argued that under the statute of limitations, the Association could not seek breach of contract damages which had occurred before April 28, 2016, or breach of fiduciary duty damages which had occurred before April 28, 2017. The trial court determined that the statute of limitations barred any action. While we disagree that the statute of limitations completely barred recovery, we conclude that it does bar breach of contract damages which had occurred before April 28, 2016. The issue was properly preserved.

The statute of limitations begins to run when the cause of action accrues. § 95.031(1), Fla. Stat. (2020). "A cause of action accrues when the last element constituting the cause of action occurs." *Id.* "The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003).

Here, the Declaration constituted a valid contract. Budgets and assessments for the community were made by the Association on a yearly basis. The Developer's failure to pay its full deficit funding obligation constituted a material breach and resulted in damages because the Association was underfunded. However, this was a yearly obligation, meaning the breaches and damages occurred yearly as well. Thus, this cause of action accrued on a yearly basis.

The Association contends that section 720.303(1), Florida Statutes (2020), applies and prevented the Association from bringing suit before turnover by the Developer. *See* § 720.303(1) ("After control of the association is obtained by members other than the developer, the association may institute, maintain, settle, or appeal actions or hearings in its name on behalf of all members concerning matters of common interest to the members . . . ."). But section 720.303(1) does not apply to this Declaration, as section 720.303(1) was enacted long after the community was established, and the Declaration was recorded. *See* § 720.302(2), Fla. Stat. (2020) ("[T]he Legislature recognizes that certain contract rights have been created for the benefit of homeowners' associations and members thereof before the effective date of this act and that ss. 720.301–720.407 are not intended to impair such contract rights . . . ."); *Pudlit 2 Joint Venture, LLP v. Westwood Gardens Homeowners Ass'n*, 169 So. 3d 145, 151 (Fla. 4th DCA 2015) (holding that trial court erred in applying statute that conflicted with association's declaration, where declaration predated the statute).

Moreover, no statute tolls the statute of limitations for community associations to bring suit. As the Florida Supreme Court has pointed out:

> To give proper effect to statutes of limitations, courts must also faithfully apply the accrual and tolling rules prescribed by the Legislature. "[A]ny period of limitation is utterly meaningless without specification of the event that starts it running." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 199, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (Scalia, J., concurring in part and concurring in the judgment) . . . .
>
> . . . . When a "statute purports to provide a comprehensive treatment of the issue it addresses, judicial lawmaking is implicitly excluded." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts 96* (2012). Put differently, given the comprehensive statutory framework governing accrual, "[t]o supply omissions transcends the judicial function." *Iselin v. United States*, 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566 (1926); *see also S. Ct. Adept*, 271 So. 3d at 886 (Canady, J., dissenting) ("The accrual doctrine should not be manipulated when the Legislature has clearly pronounced what the exceptions are and are not.").

*R.R. v. New Life Cmty. Church of CMA, Inc.*, 303 So. 3d 916, 923 (Fla. 2020).

Interestingly, for condominium associations, the Legislature has provided that "[t]he statute of limitations for any actions in law or equity which a condominium association or a cooperative association may have shall not begin to run until the unit owners have elected a majority of the members of the board of administration." § 718.124, Fla. Stat. (2023). The Homeowners' Association Act does not contain a similar provision. *See, generally,* §§ 720.301–720.407, Fla. Stat., *et seq.*; *see also Bruce J. Berman & Peter D. Webster*, 4 Fla. Prac., Civil Procedure § 1.1221:17 (May 2024 Update) (footnote omitted) ("By statute, the running of the limitations period on suits filed by condominium associations is tolled until control of the association passes from the developer to the unit owners. There is no comparable provision, however, in the statute governing homeowners' associations."). That the Legislature provided a tolling of the statute of limitations for condominium associations but not for homeowner associations is significant. For the court to supply the omission "transcends the judicial function."

11

While the Association contends that it was unable to bring an action while its board was controlled by the Developer, the Association's inability to pursue the claim does not affect the accrual of the cause of action, from which the statute of limitations runs. In *R.R.*, our supreme court held that a minor's claim accrued for purposes of the running of the statute of limitations when his injury occurred, despite the fact that he did not have a legal representative to bring the claim. 303 So. 3d at 924. In this case, the Association's action against the Developer accrued every time the Developer underpaid its deficit funding obligation, even if the community had not yet been turned over to the members.[2]

We conclude the trial court erred in determining that the statute of limitations barred the entire action. However, the statute of limitations does bar any cause of action for breach of contract damages accruing more than five years before the filing of the complaint. § 95.11(2)(b), Fla. Stat. (2020).

## Denial of Discovery

In its summary judgment response, the Association requested that, pursuant to Florida Rule of Civil Procedure 1.510(d), the summary judgment proceedings be continued so that the Association could conduct several scheduled depositions, including those of four of the five Developer-Directors. The Developer objected, noting that the case had been pending for two years. The trial court denied the Association's request to continue discovery, because the Association had failed to support the extension request with an affidavit and failed to explain the additional discovery needed or how such discovery would defeat the Developer's motion.

A request to continue a summary judgment proceeding is reviewed for abuse of discretion. *White v. Discovery Comms., LLC*, 365 So. 3d 379, 386 (Fla. 1st DCA 2023). We conclude that the court did not abuse its discretion.

Florida Rule of Civil Procedure 1.510(d) provides that a court may postpone summary judgment due to outstanding discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . . ."

---

[2] We note that the homeowners could have brought suit on a derivative basis during the time when the Developer had controlled the Association.

The Association concedes it did not attach an affidavit with its request to extend discovery, but argues that its request should be considered a "declaration" under the rule. Section 92.525, Florida Statutes (2022), provides that a declaration requires a statement given under penalty of perjury. Thus, a declaration is effectively the same as an affidavit in its solemnity.

The Association's request to continue discovery failed to contain such a written declaration. More importantly, the Association's request to postpone the proceedings only stated several depositions were still pending. Other than the deposition schedule, the Association did not include any "specified reasons" why it could not present facts essential to justify opposition to summary judgment.

Federal courts interpreting the federal summary judgment standard have held that a nonmovant may not simply declare discovery is outstanding, but instead must inform the court why it expects the outstanding discovery to adduce evidence that will defeat summary judgment. *See Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (quoting *Raby v. Livingston*, 600 F. 3d 552, 561 (5th Cir. 2010)) ("[N]on-moving parties requesting Rule 56(d) relief 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.' Instead, the non-moving party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'"); *Ornelas v. Fidelity Nat'l Title Co. of Washington Inc.*, 245 Fed. App'x 708, 710 (9th Cir. 2007) ("[T]he district court did not abuse its discretion by denying the motion to continue, which was filed after Ornelas' summary judgment motion. While Ornelas specifically identified the people she wished to depose as well as the topics of the proposed depositions, Ornelas's Rule 56(f) motion did not state how this testimony would fit into her case or how it would be 'essential' to defeating summary judgment.").

The Association's request to continue discovery did not supply this information to the trial court. Accordingly, the Association failed to comply with rule 1.510(d), and the trial court did not abuse its discretion in denying the Association's request to extend discovery. *See De Los Angeles v. Winn-Dixie Stores, Inc.*, 326 So. 3d 811, 812–13 (Fla. 3d DCA 2021) (finding no abuse of discretion in proceeding with summary judgment despite ongoing discovery where nonmovant did not file a motion for continuance or file affidavit in support of need to conduct additional discovery).

## Denial of Rehearing

With its motion for rehearing, the Association submitted several depositions of the Developer-Directors, as well as other reports. The trial court denied the motion without comment. The Association contends that the court abused its discretion in refusing to consider the evidence. The trial court's lack of comment makes it unclear whether the court did not consider the evidence or concluded that the evidence did not preclude summary judgment.

"A trial court has broad discretion to grant a rehearing of a summary judgment when the party seeking rehearing submits matters that would have created an issue precluding summary judgment." *Petrucci v. Brinson*, 179 So. 3d 398, 400 (Fla. 1st DCA 2015) (citation omitted). This discretion can be abused when the trial court "refuses to consider such [evidence] where compelling reasons or exigent circumstances explain its late filing." *Dalrymple v. Franzese*, 944 So. 2d 1240, 1243 (Fla. 4th DCA 2006). In *Dalrymple*, the compelling circumstances were that the nonmovant's expert was unable to complete his investigation and affidavit before summary judgment due to Hurricane Wilma, and the nonmovants attached an affidavit averring the same to their motion for rehearing. *Id.* at 1242.

In this case, the Association's motion for rehearing did not provide reasons why the new evidence was not submitted for consideration at summary judgment, other than the fact that the depositions had been recently taken. Moreover, while the rehearing evidence may have shed light on the control that the Developer had exercised over Developer-Directors, the rehearing evidence did not show that the Developer-Directors had acted with willful malfeasance or bad faith as opposed to negligence. The rehearing evidence did not show that any Developer-Director had intentionally refused his or her obligation to establish funding for reserves or that any of them intentionally underestimated the number of unsold units and overestimated the amount collected in base assessments in order to undercharge the Developer for its deficit funding obligation. Thus, the rehearing evidence would not have precluded summary judgment on the Association's claim for breach of fiduciary duty.

As to the breach of contract claim, the new evidence—an expert's report—provided evidence that the Developer's units had been undercounted, and the Developer had not paid its proper share of the yearly budget. As we have reversed on this issue, the failure of the trial court to grant rehearing based upon that issue is moot. The trial court

did not abuse its discretion in denying the motion for rehearing including the new evidence presented.

## Conclusion

The trial court properly granted summary judgment on the Association's claims of breach of contract against the Developer for failing to fund the reserves and breach of fiduciary duty against the Developer and Developer-Directors for failure to fund reserves for the maintenance of community property. However, the court erred in granting summary judgment based on standing. The court also erred in granting summary judgment on the claim of breach of contract for undercounting the Developer units resulting in the Developer failing to pay its deficit funding obligation. As to the statute of limitations, because each budget and assessment where the Developer's contribution was miscalculated constituted a material breach of contract, the Association's recovery is limited by the statute of limitations to damages accruing within five years of the filing of suit.

*Affirmed in part; reversed in part; and remanded for further proceedings.*

GERBER and KUNTZ, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

15